Drake, Ch. J.,
delivered the following opinion :
Upon the facts found by the court, my views are as follows:
The claimant’s case is presented ,on two theories, one contained in his petition, and the other in the brief of his counsel.
The former proceeds upon the contract of July 28, 1804, entered into between the claimant and Captain Mullin, assistant quartermaster, and annexed to and made part of the petition; under which the claimant’s petition avers “that he delivered *486 at Camp Fillmore, in tbe month of September, 1864, sis hundred and forty-nine bushels of corn, of the weight, character, and quality specified in said contract, in sacks, to the proper officer at said post authorized to receive it for the United States, and the same was duly examined and inspected by a proper officer of the United States, and found to be conformable to said contract, and was accepted by the United States in fulfillment of said contract. And the officer not having funds in his hands at the time of delivery to pay for the same, on the 15th day of October, 1865, a voucher, in the customary form of quartermaster’s voucher, was made out by Captain F. T. Turnley, of the United States Quartermaster’s Department, for the sum of $4,116.20, in payment for said corn, and delivered to petitioner, whereby the United States became liable to pay the amount of said voucher to petitioner.”
The other theory of the claimant’s ease, as stated in his counsel’s brief, is, that the contract was set out in the petition by way of inducement merely; that he relies upon his voucher as the basis of his claim; that the voucher was issued in pursuance of a new and independent agreement; and that the defendants cannot now, after the delivery of the corn, set up the old contract.
Upon neither of these theories, in my opinion, can the claimant recover the amount of that voucher.
If his case is rested on the theory of a new and independent agreement, in pursuance of which the voucher was issued, such agreement is in direct antagonism to three acts of Congress, viz: 1. The tenth section of the Act March 2d, 1861, (12 Stat. L,, 220,) requiring all contracts for supplies to be made after advertising therefor, unless “immediate delivery is required by the public exigency;” 2. The fourth section of the Act July 4th, 1864, (13 Stat. L., 396,) vesting in the commanding officer of an army or detachment the power to order the chief quartermaster thereof to procure the supplies to meet an emergency requiring their immediate procurementand 3. The first section of the Act June 2d, 1862, (12 Stat. L., 411,) requiring all contracts to be reduced to writing, and signed by the contracting-parties.
It is clear that if the corn in question was delivered by the claimant outside and independent of the written contract sued on, then it was delivered under a parol agreement with an assist *487 ant quartermaster, without any authority from the commanding officer of the army or detachment with which he was connected, and without any emergency being shown, and without the contract being reduced to writing. The contract was therefore void. {Renderson1 s Case 4 C. Cls. B., 75; McKinney's Case, ibid., 537.) The second theory is, therefore, la my opinion, untenable.
I hold, therefore, that the corn, if delivered at all, was delivered under the written contract sued on. But in my view there was no delivery in accordance with the terms of that contract. Though it was put into the G-overnment store-house at Camp Fillmore, yet it was not delivered to, nor received or inspected by, the commanding officer at that post, or by any officer of the United States, before it was placed therein; and its deposit there by the claimant or his agent, without the authority, inspection, or knowledge of the commanding officer of the post, or any other officer, imposed per se no liability upon the Government for it or its custody.
Therefore, whichever theory is. relied on, no action exists against the Government for the whole quantity of 37,420 pounds of corn mentioned in the voucher.
The claimant,however, insists that the execution and delivery to him of the quartermaster’s voucher for that quantity concludes the defendants. This court has not at any time ac-accorded to such vouchers any greater weight and effect than as prima-faeie evidence that their statements are true. This view was taken in Parish's Case, (2 O. Cls. B., 341,) and, in my opinion, is the true view.
As such evidence, it is, I consider, wholly overthrown by the other evidence in the case. In point of fact, as has been shown, the corn was not delivered in conformity with the contract, and the voucher was issued upon the faith of the receipt given for the corn by the quartermaster’s clerk, and presented to the quartermaster by the claimant or his agent; and the quartermaster, when he issued it, was ignorant of the facts which have appeared here, and which afterward became known to him, and upon learning which he ordered the voucher to be canceled. The voucher, therefore, concludes nothing against the defendant.
If, therefore, the claim were to be decided upon as a whole, it ought to be rejected as a whole.
But it was held by this court in Lindsley's Case, (4 C. 01. B., *488 359,) andin BxireMel’s Oase, (ibid., 549,) that tbe actual delivery of goods to, and acceptance and use thereof by, tbe Government, under a void contract, created an implied obligation to pay tbe value of tbe goods so delivered and used; and I bave no doubt as to the correctness of that view. I therefore consider that tbe claimant ought to recover the value of so much of tbe corn placed in tbe Government store-house at Camp Fillmore as was actually used by tbe Government.
That quantity appears only in tbe voucher jbr 5,991 pounds, which was made out and offered to claimant, and which he refused to receive. The defendants have admitted the use of that much, and the claimant has not proved the use of more. For that quantity, at the admitted price of eleven cents per pound, amounting in the aggregate to $659.01, judgment should be entered.