Baeney, J.,
delivered the opinion of the court:
This suit grows out of two contracts entered into by the claimant with the Government under date of July 21, 1899, for improvement work on the Mississippi River, one of them for work between Dubuque and Le Claire, Iowa, and approved by the Chief of Engineers August 25, 1899, and the other for work between Cassville, Wis., and Dubuque, Iowa, and approved August 26, 1899. Both to be completed by September SO, 1900.
Work -was to be commenced when directed in writing by the Government engineer in charge and was to be prosecuted at the points prescribed by him, there being no definite location specified for the work other than the terminal limits of the river sections named above. The contracts provided that if extensions of time for the completion of the work should be granted to the claimant he should be charged with all of the Government’s expenses of superintendence and inspection during the extension periods, and the same should be deducted from payments due, unless the Government engineer, in the exercise of his discretion, should in writing grant such extensions because of freshets, ice, or other force or violence of the elements, in which event such expenses should not be charged against the claimant.
At the time of entering into these two 1899 contracts, the claimant had two uncompleted contracts with the Government for similar Mississippi improvement work, one of which contracts was also for work between Dubuque and Le Claire, Iowa, and the other for work between Winona, Minn., and La Crosse, Wis., and each of which called for completion by the 30th of September, 1899. With the exception of dates, location, and rates of compensation, the terms and conditions of all these contracts were identical.
The force which was employed by the claimant was inadequate to prosecute these contracts simultaneously, for which reason he prosecuted them in detail at such places and *88 times as directed by the Government engineer in charge. The findings set out these movements in detail, but from the view which the court takes of the case, further mention of them here is not necessary, except to state that this method of doing the work does not appear to have been injurious to the Government for the reasons given by the Government engineer officer in charge and as set out in Finding IX, and which are self-evident. With this preliminary statement we will now consider the claims under the two contracts separately.
CASSVILLE TO DUBUQUE CONTRACT.
This contract was approved August 26, 1899, and work ordered to be begun under it November 6, 1899, and it was completed August 31,1901. The claimant was charged upon this contract for about two and one-fourth months’ extra inspection and superintendence.charges and board, or $458.67. The claimant contends that these charges were improperly made because (1) there was unreasonable delay in approving and ordering work to be"begun under this contract, (2) the claimant was delayed at different times in the prosecution of his work under this contract by being moved about from place to place to work upon other contracts, and (3) because (as it is claimed) an extension of time under this contract was granted from October 26, 1900, to September 30, 1901, on account of “ high water.”
Notice to begin work was given November 6, 1899, and the claimant had time for completion till September 30,1900, or nearly 11 months. When we take into consideration the fact that only 7 months and 29 days were occupied in completing this contract, this delay in giving notice can hardly be said to have been unreasonable, and if it had been a few weeks late (and it would not have been more than that) it could not excuse the claimant in tailing nearly a year more than the contract period to complete his contract. It would have given him a reasonable extension of time for completion and no more.
Neither do we think there is any merit in the contention that the delays in moving the work from place to place under the different contracts by order of the engineer in charge is *89 any excuse for the delay on the part of the claimant. During a large part of this time the claimant had four contracts in progress on the Mississippi Eiver, and was working with a force only sufficient to carry on one contract. The contracts all provided that work thereunder should be done “ at such points as may be selected by the Engineer officer in charge.” The exigencies of navigation on the Mississippi Eiver doubtless demanded these changes from place to place, and we think the claimant has no cause for complaint on that account.
In the fall of 1900 the claimant asked for 11 months’ extension of time on account of “high water,” and it was granted. It is now contended that this extension of time comes within section 35 of the specifications, which provides that when extensions are granted “ because of freshets, ice, or other force or violence of the elements, there shall be no deduction for inspection and superintendence for such additional time so allowed.” We do not think a period of “high water” on the Mississippi Eiver comes within this exception. They are not ordinarily occasioned by “ freshets.” It is a matter of common knowledge that on that river and on all rivers extending through a large extent of territory, periods of high water occur as regularly as the seasons. The claimant entered into his contracts with this knowledge, and knowing that during these periods work would be difficult, if not impossible. The time allowed and the time actually occupied in the completion of these contracts shows that such exigencies were taken into account. It might also be added that it is hardly possible that this period of high water would have continued the whole period of extensions, which was nearly one year.
For the reasons given we do not think the deduction of $455.67 from the contract price on the Cassville to Dubuque contract was improper, and this item of the claim is disallowed.
DUBUQUE TO LE CLAIRE CONTRACT.
This contract was approved. August 25, 1899, and work ordered to be begun under it September 19, 1900, which was *90 but 11 days before the time for its completion under the contract expired. The work was completed November 14, 1901, which was a little less than 14 months after notice given, and which was about the time which would have been allowed under the contract if notice to begin work had been given within a reasonable time. The court feels fully justified in finding this to be a reasonable time. It is unnecessary to cite authorities to the proposition that when a contractor has more than a year after notice to begin to complete a job, and notice is not given until 11 days before the time for completion, he will have a reasonable time in which to do the work.
But it is contended by the Government that the claimant did not employ a force adequate to carry on all of his contracts simultaneously (and the findings show that to be the fact), and for that reason it was not incumbent on the engineer officer in charge of the work to give notice to begin on this contract before he did. Evidently the engineer thought not, certainly as a moral obligation, and did not give the notice before he saw the claimant could respond. It is more than likely that he withheld giving the notice as long as he did as a favor to the claimant, knowing as he did, and as the findings show he said, that this would involve no additional expense to the Government by way of ^additional superintendence or inspection. It was, however, incumbent on him as a legal obligation, if he wished to impose upon the claimant the obligation to complete the contract before September 30, 1900, or incur additional expenses for inspection and superintendence. It might also be asked, what right have we to assume that if the notice had been given in time to require completion within the terms of the contract the claimant would not have employed a sufficient force for that purpose?
The Government has also introduced evidence tending to show that it was the custom in contracts of this kind for the contractor first to notify the engineer officer when he was ready to begin work before an order to do so would be given, and has asked for a finding to that effect. A custom may be shown to explain a written contract when doubt arises as to *91 tbe meaning of words or expressions of doubtful character and various senses; in other words, when there is something to explain. But when its provisions are plain and susceptible of but one meaning, no custom or usage can contradict them. (Insurance Co. v. Wright, 1 Wall., 456, 470; Barnard v. Kellogg, 10 Wall., 383, 390; 2 Greenleaf on Evidence, secs. 251, 292.)
Even if such were the custom, we can not see how it would help the Government in this case; on the contrary, if anything, it makes against it. It would only show that the time limit in the contract was of but little importance and that contractors were given time to complete existing contracts before the time limit was started under new contracts, and then by custom were given a reasonable time in which to complete new contracts if the giving of the notice was too long delayed.
It is further contended by the Government that the receipts given by the claimant are an acquittance of any further demand under these contracts, and numerous authorities from our own courts are cited in support of this contention, and an equal number from the same courts are cited in opposition. It would serve no good purpose to enter into a discussion and analysis of these numerous cases and we shall not do so. At the time these receipts were given -there was no dispute between the parties as to the amount due the claimant; the Comptroller of the Treasury had decided that the amount received was all that was due, and the paymaster could pay no more, and the claimant knew this. Quite likely he was led to believe that no greater sum was due him, but if so, as we decide, he was mistaken. There was no settlement or accord and satisfaction between the parties, because there was nothing to settle and no difference between them to accord, and hence there could have been no consideration for receipting for a sum less than was actually due.
Under the authorities as we understand them we do not believe that the claimant is barred from recovering the balance which we find was honestly his due under the' terms of the contract. (Glavey v. United States, 182 U. S., 595, 607-608; Fire Insurance Association v. Wickham, 141 U. S., 579; *92 Bostwick v. United States, 94 U. S., 58; 12 C. Cls., 68; Kiskadden v. United States, 44 C. Cls., E. 205, 219; Murdock v. United States, 44 C. Cls., R. 464; Cramp & Sons v. United States, 216 U. S., 494.)
Judgment is ordered for the claimant in the sum of $1,391.66.