Peelle, Ch. J.,
delivered the opinion of the court:
The claimant seeks recovery for a balance claimed to be due on a contract which was performed according to its terms and full payment therefor made except as to the sum of $4,750, which the Government by its set-off in the nature of a cross petition alleges should have been deducted as liquidated damages under a prior contract for the failure of the claimant to complete the work thereunder within the contract time, notwithstanding the time limit had been waived and the claimant permitted to proceed with the work to completion and full payment therefor was made.
The claimant for replication admits that there was such a contract, but says that before the expiration of the time fixed therein for the completion of the work the Quartermaster General waived the time limit.
No reference is made in the petition to this prior contract, but the Government by its cross petition alleges that the amount deducted under the contract sued on was inadvertently and contrary to law paid to the claimant under said prior contract.
Said first contract provided for the construction, equipment, and delivery in New York to the Government of a single-screw steamer for harbor purposes, article 2 of which provided as follows:
“Article 2. That the Maryland Steel Company shall complete the construction and equipment of the said steamer and deliver same to the party of the first part in New York Harbor, or as directed by him, in one hundred forty (140) days, exclusive of Sundays and legal holidays, from the date of this contract. And it is hereby agreed that in case the party of the second part fails to complete in all respects and deliver the said steamer within the time herein specified, the loss re- *56 suiting to the United States from such failure is hereby fixed at the rate of fifty ($50) dollars per day for each and every day, exclusive of Sundays and legal holidays, completion and delivery of the vessel is delayed beyond the period hereinbefore specified, and it is hereby stipulated that the party of the first part may withhold such amount as liquidated damages from any money due and payable to the party of the second part by the United States for work done under this contract. In the event of the act of God, war, fire, or strikes and lockouts of workmen affecting the working of this contract, the date of completion of the steamer may be extended for such period as may be deemed just and reasonable by the party of the first part, to cover the time lost from any of the above-mentioned causes.”
It will be noted that time was of the essence of the contract and a breach thereof would have given the opposite party the option of treating the contract as discharged. Slater v. Emerson, 19 How., 224. On the other hand, had the contractor failed to perform within the specified time, the Government’s permission for it to continue performance would have operated as a waiver of the breach. Jeffrey Mfg. Co. v. Iron Co., 93 Fed. R,., 408; Davis v. Roberts, 89 Ala., 402; Barnard v. McLeod, 114 Mich., 73.
In the present case the time limit within which to complete the work was orally waived by the Quartermaster General before the expiration of the time fixed in the contract therefor, and accordingly the claimant proceeded therewith and thereafter on April 1, 1904, completed the work. On the day succeeding the completion of the work, to wit, April 2, 1904, the Quartermaster General, United States Army, in writing, confirmed the waiver of the time limit as aforesaid, following which, by order of said Quartermaster General, the depot quartermaster at New York made final payment to the claimant for the steamer so completed under said first contract, less 10 per cent retained by way of indemnity for any defects that might appear in either the material or workmanship.
Thereafter, July 13, 1904, the percentage so retained was paid over to the claimant company. Thus the transaction under the first contract, it would seem, was closed.
*57 Nearly four years thereafter, to wit, February 24,1908, the claimant entered into a written contract, made part of the petition herein, whereby the claimant, for the consideration of $357,500, agreed to furnish all the necessary labor and material therefor and to build one steel hull twin-screw suction dredge, and to furnish and install therein the propelling and necessary machinery, electric-light plant, etc., and to deliver the work at Sparrows Point, in the State of Maryland, which work was completed on January 6, 1909, and the claimant was fully paid therefor, less $4,750, which was withheld as due under the first contract as liquidated damages for the 95 days’ delay of the claimant in the completion of the steamer thereunder, notwithstanding the waiver of the time limit by the Quartermaster General and payment of said amount as aforesaid.
The verbal waiver of the stipulated time within which to perform work under a contract notwithstanding the act of 1862, 12 Stat., 411, requiring contracts to be in writing, finds support in the case of Salomon v. United States, 19 Wall., 17, 19; 7 C. Cls., 482, wherein Justice Miller, reversing this court, said:
“ Whether we regard the delivery made in October as made under a verbal extension of the time stipulated in the original contract, or consider it as a new transaction in which the Government received and took possession of the com and used part of it and permitted the remainder to be injured in its hands, we think the claimant is equally entitled to be paid for it.
“ The act of 1862, requiring contracts for military supplies to be in writing, is not infringed by the proper officer having charge of such matter accepting delivery of such supplies after the day stipulated, nor is a verbal agreement to extend the time of performance invalid.
“ And if this were not so, when the quartermaster in charge receives of a person corn for the Government, gives a receipt and voucher for the amount and the price, and the Government uses such part of it as it wants and suffers the remainder to decay by exposure and neglect, there is an implied contract to pay the value of such corn, which value may, in the absence of other testimony, be presumed to be the price fixed in the voucher by the quartermaster.”
In the case of District of Columbia v. Camden Iron Works, 181 U. S., 453, 461, involving the construction of a similar *58 statute, requiring contracts made by the Board of Public Works of the District to be in writing and signed by the parties, the court held in substance that the delivery of the material contracted for after the time specified in the contract did not constitute a new contract. See also Williams v. Bank, 2 Pet., 96, therein cited, and Phillips Construction Company v. Seymour, 91 U. S., 646.
But we do not understand the Government to seriously controvert the waiver of the time limit. It does, however, vigorously contend that, notwithstanding the waiver, the liquidated-damage clause of the contract continued in force. The waiver of the time limit was before the expiration of the time agreed upon for the completion of the work, -and therefore no liquidated damages had then accrued. Guyer v. Warren, 175 Ill., 328; Vandergrift v. Engineering Co., 161 N. Y., 435. See Page, on Contracts, sec. 1157.
The Comptroller held that, where time is of the essence of a contract and the default of the Government causes the contractor to delay in beginning and prosecuting the work, such default on the part of the Government operates to nullify the provision for liquidated damages, leaving the contractor liable only for actual damages. 14 Comp. Dec., 819. Such, also, was a decision of the Comptroller in 15 Comp. Dec., 862-368.
In the case of District of Columbia v. Camden Iron Works, supra, where the completion of the work was prevented by the delay of the Government, the court, in substance, held, following the decision in the case of Williams v. Bank, 2 Pet., 96, 102, that strict performance being prevented the claim for fines or penalties for delay could not be sustained.
In the present case, however, there is no contention that the Government was at fault or in any way responsible for the failure of the claimant to complete the work within the contract time. On the contrary, by reason of its inability so to do, and at its request, the time limit was waived by the Quartermaster General.
Had the Government prevented performance, the date from which to assess liquidated damages would have been eliminated; but here the failure was alone the claimant’s; and to hold that, under such circumstances, the date from *59 which to assess such damages was eliminated would be giving the claimant an advantage in its own wrong. Hence, it must be held that the waiver, by reason of the default of the contractor, did not operate in law to relieve it from the payment of the agreed damages. In other words, the waiver simply prevented the forfeiture of the contract and permitted the claimant to continue to perform, subject to all the other provisions of the contract, and if thereafter the work was not done within a reasonable time the contract again became subject to forfeiture; but if, instead of such forfeiture, the claimant was permitted to continue to perform to completion, the provisions of the contract otherwise continued in force.
Any other ruling would deprive the Government of the agreed damages for its indulgence with the claimant, a defaulting contractor, and at the same time relieve it from the damages occasioned by its own default. Nor is it material whether the waiver was before or after default, as the claimant conceded its inability to complete the contract within the agreed time, and for that reason alone the waiver was granted.
There is a vast difference between this case and the United, Engineering and Contracting Co. Case, 47 C. Cls. -, where the Government, by its delay, prevented the claimant from performance within the contract time. In such case the delay of the Government, in the absence of some contract provision therefor, operated in law not only to waive the time limit and give the claimant a reasonable time within which to perform, but to eliminate the date from which, upon the default of the contractor, the agreed damages were to have been assessed; and that date eliminated by the default of the Government, another or new date could not be fixed, except with the consent of the claimant; nor can the continuance of the work by the claimant in such case be construed as continuing in force the liquidated damage clause of the contract, as there is no new date from which to assess such damages and the claimant had not agreed to submit the fixing of such date to the arbitrary action of an officer of the Government or to a jury. Mosler Safe Co. v. Maiden Lane S. D. Co., 199 N. Y., 479, 489, and cases there cited.
*60 In the present case as the waiver was granted by reason of the default of the claimant such waiver did, not embrace a release from the payment of the agreed damages, which were assessable upon its default. Under such circumstances an officer, in the absence of some provision of law or contract therefor, would have no authority to release a contractor from the provision for liquidated damages so arising.
The claimant, however, independent of the waiver, contends that the payment in full under the first contract was an accord and satisfaction conclusive on the Government. But this would not be so if the payment were made under a mistake of fact or contrary to law. (Wisconsin Central Railroad Co. v. United States, 164 U. S., 190, 212; McKee v. United States, 12 C. Cls., 504; United States v. Bank of the Metropolis, 15 Pet., 377.)
Where one party to an agreement gives and the other accepts, in satisfaction of a claim in dispute, something other than or different from what he is or claims he is entitled to, such settlement will, in the absence of fraud, mistake, or duress, be considered an accord and satisfaction binding on both parties. But in the present case the claimant received and accepted what both parties at the time conceded to be due. True, there was some controversy as to whether the waiver of the time limit operated to deprive the Government of its right to liquidated damages, but the Quartermaster General construed this controversy in the claimant’s favor and paid, not a different sum, but the exact sum claimed to be due. (Pickley v. United States, 46 C. Cls., 77, 91.)
The final question therefore is, Shall the settlement thus made stand? There are authorities to the effect that if liquidated damages be not deducted at the time of payment the right thereto is lost. Hudson on Building Contracts, p. 538 et seq., and cases there cited. But here again, if the payment was made in mistake of law the Government is entitled to recover it, as held in the case of the Wisconsin Central Railroad Co., supra, where, in this respect, quoting from the case of Barnes v. District of Columbia, 22 C. Cls., 366, 394, the court said: “ The doctrine that money paid can be recovered back when paid in mistake of fact and not of law does not have so general application to public officers using the funds *61 of the people as to individuals dealing with their own money where nobody but themselves suffer for their ignorance, carelessness, or indiscretion, because in the former case the elements of agency and the authority and duty of officers, and their obligations to the public, of which all persons dealing with them are bound to take notice, are always involved.” The court then adds: “ We concur in these views and are of opinion that there is nothing on this record to take the case out of the scope of the principle that parties receiving moneys illegally paid by a public officer are liable ex aequo et bono to refund them.”
It must therefore be held that the amount herein claimed having been inadvertently and illegally paid to the claimant under said prior contract the same was properly deducted under the contract in suit, and for this reason the claimant is not entitled to recover, and its petition is dismissed, which is accordingly ordered.
Howry, J., was not present when this case was tried and took no part in the decision.