Graham, Judge,
delivered the opinion of the court:
The plaintiff in this case was a resident of the city of Plouston, Tex., and had been for many years engaged in a general contracting business conducted under the name oi Plorton & Plorton.
On September 28, 1918, he entered into a contract with the defendant through the Bureau of Yards and Docks of *155 the Navy Department whereby, in consideration of payment to bim of $108,500, be agreed to construct at the naval air station at Galveston, Tex.,, a timber bulkhead, and to dredge certain areas adjacent thereto and to deposit the dredged materials in the bulkhead, work to be in charge of a Government officer representing the defendant.
After the contract had been executed the Bureau of Yards and Docks changed the plans and specifications so that the height of the bulkhead above mean low-water mark was raised to 6 feet from 5 and the height of the fill behind the bulkhead was increased to 8 feet from 5 feet, without increasing the length of the piles.
The bulkhead extended into the bay some 300 feet beyond the shore line. It was in contemplation of the parties that the fill inside the bulkhead should be made by the deposit of silt, mud, and sand drawn from the bottom of the bay and deposited in the fill. This was accomplished through iron piping by means of hydraulic dredges, by which the dredged material was forced through the piping and deposited from the end of the latter within the bulkhead.
Plaintiff proceeded to construct, and did construct, the bulkhead in accordance with his contract and the plans and specifications as changed. Said change in plans required the construction of an additional timber barrier built upon and just within the bulkhead and above it in order to hold the extra 3 feet of fill provided for in the said change of plans from 5 feet to 8.
The contract called for piles 30 feet in length. The plaintiff, although not required to do so, provided piles 32 feet in length, 2 feet longer than required.
As the work progressed in the driving of piles the plaintiff discovered that there were certain places where the earth beneath the water was soft. Particularly was this so at the point where the break subsequently occurred which gave rise to this suit.
Plaintiff informed the officer in charge that in his opinion the bulkhead as designed was not strong enough, in view of these soft places and the pressure of the earth which would be deposited within, and to this the officer in charge agreed. *156 Tbe plaintiff then recommended tbat tbe bulkhead should be strengthened, particularly at the points where the earth had been found to be soft, including the point where the break occurred, with anchor piles driven inside of the bulkhead and iron tie-rods attached thereto and attached to the piles of the bulkhead, and that in addition thereto there should be erected batter pile bracing on the outside. The officer in charge, however, concluded that the anchor piles and tie-rods were sufficient and recommended placing of the same to the Bureau of Yards and Docks, but did not indorse the further recommendation of the plaintiff as to batter piles outside. The recommendation was approved by the bureau, and certain anchor piles and tie-rods were put in place by plaintiff as directed. The defendant, through the officer in charge, furnished the anchor piles and tie-rods.
When plaintiff was informed of this decision of the defendant to use only anchor piles and tie-rods he again protested to the officer in charge that the change recommended would not add sufficient strength to the bulkhead and again urged the use of batter piles in addition to it. His protest and recommendation were ignored, and following the direction of the Bureau of Yards and Docks he put in the anchor piles and affixed the tie-rods provided and as required by the bureau.
At the point where the break occurred at the time the piles were being driven on account of the soft and yielding character of the earth the plaintiff advised and recommended that longer piles than those specified should be used in order to- give needed strength to the bulkhead. The officer in charge concurred in this opinion that such change ought to be made, but on account of the defendant’s desire to hurry the work and avoid delay which the securing of longer piles would occasion, the plaintiff was not authorized to use longer piles.
When the fill was approaching the top of the bulkhead, on June 7, 1919, a portion of the latter, at the point where the plaintiff had pointed out weakness and had recommended longer piles as well as batter-pile bracing, broke under the *157 lateral pressure against it of tibe material within, and a large quantity of the fill escaped. It was found on examination that some of said anchor piles had broken and some had pulled up. Two of the tie-rods had broken. One of the tie-rods had a weak point where two pieces had been welded together prior to being furnished to plaintiff by the officer in charge. A large quantity of the material deposited inside slipped out of this opening into the sea.
The officer in charge ordered the plaintiff to repair this break and rebuild the bulkhead, and this the plaintiff did under direction of the officer in charge, and presented his claim for additional compensation, and payment of it was refused, and thereupon he brought this suit.
The plaintiff did not agree, in his contract, to suffer any and all losses which might occur by reason of the defendant’s mistakes, or to bear losses which occurred by reason of defects in plans which he was directed to use.
The break in the bulkhead, with the moving out of the material through it into the sea, created an emergency which required prompt action in order to stop the outgo of the material already deposited. The plaintiff was ordered to do the work by the officer in charge, and he did it under direction of the officer in charge.
The work was accepted by the defendant, and it has received the benefit of it. Clark v. United States, 95 U. S. 539; Salomon v. United States, 7 C. Cls. 482, 19 Wall, 17; Peck v. United States, 14 C. Cls. 84, 102 U. S. 64, and Horton v. United States, 57 C. Cls. 395.
The court has found that the reasonable value of the labor performed and services and materials furnished by the plaintiff in connection with the work was $9,274.99. This amount the plaintiff should recover.
Judgment should be entered for the plaintiff in the sum of $9,274.99, and it is so ordered.
Hat, Judge; DowNet, Judge; Booth, Judge; and Campbell, Chief Justice, concur.