Atkinson, J.,
delivered the opinion of the court.
April 4, 1903, a contract was executed between the United States and plaintiff for the construction of a hospital building at Chickamauga Park, Ga., in accordance with plans and specifications attached, wherein it was stipulated that plaintiff should be paid the sum of $59,472 for said work. The contract contained a provision that work on the building should begin April 6, 1903, and be completed on or *349 before January 1, 1904. The contract, however, was not approved by the Quartermaster-General until April 28, 1903, twenty-two days subsequent to the time specified for the beginning of the work under the contract.
Articles 2 and 3 of the contract, which are material in the issue before us, are in the language following:
“Article 2. The time of the completion of the work being an essential element and consideration of this contract, it is further agreed that in case of the failure of the party of the second part to complete in all respects the work called for under this contract on or before the date stipulated for such completion, the loss resulting to the United States from such failure, as liquidated, ascertained and fixed damages is hereby fixed at twenty (20) dollars for each and every day that the work on the building remains uncompleted after such date, and it is hereby stipulated that the party of the first part may withhold such amount as liquidated damages from any money due the party of the second part from the United States, and should the amount due the said party of the second part be insufficient to cover the loss at the above rate, then the party of the second part shall pay the excess of such damages over the amount due; provided, that delays caused by quarantine restrictions, storms, floods, or other violence of the elements may, upon the recommendation of the proper officer and approval by the Quartermaster-General, be excluded in determining the amount of said damages.
“Article 3. That work on this contract shall commence on or before the sixth day of April, nineteen hundred and three, shall be carried forward with reasonable dispatch, and be completed on or before the first day of January, nineteen hundred and four.”
After considerable work had been done it became manifest to plaintiff, as shown by the findings, that he could not complete the work within the time required by the contract, and on December 9, 1903, he requested an extension of time, and in this request he obligated himself in case his request was granted to complete the work within a reasonable time, naming ninety days thereafter, and agreeing to become liable for any damages which might arise should he fail to carry out his obligation under such waiver, and agreeing further that all other provisions of the original contract should remain in full force and effect.
*350 The surety company on plaintiff’s bond agreed to the waiver of the time limit, but said nothing about any other limitation for completion, simply requesting that the contractor be “ permitted to proceed with his work with reasonable dispatch and finish the same within reasonable time; what constitutes reasonable dispatch and reasonable time to be decided by the officer in charge.”
The officer- in charge of the construction of the building favorably recommended plaintiff’s application for an extension of time in which to complete his contract. The Quartermaster-General, after due consideration, decided that “ The time limit of said [this] contract is hereby waived in accordance with office circulars of November 8, 1902, and August 6, 1903, the conditions of which you will communicate to the contractor,” which was accordingly done by the officer in charge of the work.
The circular letters to Avhich reference was made by the Quartermaster-General authorized the agents of the United States in his department to waive the time limits of contracts, provided applications therefor are made in writing, and the consent of their sureties are appended to their requests for waivers, instead of annulling the original contracts, and stating also that reasonable time may be allowed for the completion of the work under their contracts.
The defendants contend, however, that the Quartermaster-General did not possess the power to waive the provisions of a contract which stipulated liquidated damages for breach thereof, and they, therefore, insist that the terms of section 2 of the contract, supra, should be literally carried out. The findings show that the defendants’ agent who was superintending the construction of the building and the Quartermaster-General both treated plaintiff as free from fault, and not only waived the time limit, but advised that no damages should be assessed against him.
We do not deem it necessary to consider the waiver respecting the damages assessed against the plaintiff, since he was prevented by the defendants from executing his contract in accordance with its terms (Finding I). It stated that time is an essential feature of the contract, but it also provides that it must be approved by the Quartermaster-General *351 before it becomes binding. It was not so approved until twenty-two days after the time fixed for beginning the work by plaintiff. It is well settled that where one of the parties to a contract demands strict performance as to time by the other party, he must comply with all of the conditions requisite to enable the other party to perform his part, and a failure on the part of the one demanding performance to do all the preliminary work required by him to enable the other party to complete the work within the time limit, operates as a waiver of the time provision in the contract.
It appears that the plaintiff completed the construction of the building in this case, within a reasonable time, and that the defendants incurred no expense and suffered no loss in consequence of such delay.
In the case of Dannat et al. v Fuller (120 N. Y. R., 550), in passing upon a contract very similar to the one at bar, the court decided: “ It consequently appears to us that the failure of the plaintiffs to perform on their part operated as a waiver of the performance of the contract as to time, and the defendant consequently had the right to perform his part of the contract within a reasonable time after the plaintiffs had completed their part. The allowing of the defendant thirty days additional time in which to complete the contract, as was done in this case by the referee, does not restore the provisions of the contract which had been waived. It was, in effect, the making of a new contract for the parties by the referee. The defendant having contracted to do this work within a specified time, was bound to have his servants and employees on hand ready to perform within that time. He had the right to assume that the plaintiffs would perform on their part, and therefore could properly contract with other parties for the time of himself and employees for any future time not covered by his contract with the plaintiffs. They could not prevent his performance by delays on their part for even a greater period than that specified in the contract in which he was to perform, and then require him to proceed immediately, for this would require him to do the work at another time than that named in the contract, and when he might be under obligations to other- parties.”
*352 The same doctrine is laid down in the case of Standard Gas Light Co. v. Wood (61 Fed. R., 74), wherein the court held that “ the promise to complete on November 15, and to pay $100 for each day’s default thereafter, expressly hinged upon the gas company’s completion of its part of the work by June 15. When the condition upon which the promise depended was unperformed through the default of the gas company, the promise to complete by a certain day was no longer obligatory; but if the contractors entered upon the work, they were under an obligation to finish within a reasonable time. The gas company had, by its default, waived or abandoned the right to call upon the contractors for strict performance as to time, who, if they entered forthwith upon the work, had the right to a reasonable time for performance.” (District of Columbia v. Camden Iron Works, 181 U. S. R., 453; Holme v. Guppy, 3 Meeson & Welsby, 386; Russell v. Da Bandeira, 13 Com. Bench (new series), 149; Dodd v. Churton (1897), 1 Q. B., 562; 1 Hudson Building and Engineering Contracts (3d edition), 525, 554).
The officer in charge of the construction of the work for the defendants, after taking into consideration the “ reasonable time ” necessary under existing conditions to complete the construction of the hospital building, paid the plaintiff in full, after the same was completed and received by him under the terms of the original contract and the extension of time granted by the Quartermaster-General in which to construct the same. Subsequently the sum of $4,860 was charged back to him by the Auditor of the Treasury for the War Department under a decision of the Comptroller of the Treasury as liquidated damages from January 1 to August 31,1904, a period of 243 days, at $20 per day, as provided by the original contract. Upon the request of the defendants’ representative in charge of the construction of the building, under the contract, plaintiff promptly refunded to said representative $4,860, and to recover the same he brings this suit.
It is true, as shown by the findings, the plaintiff refunded to the defendants said sum of money, so that said officer might be enabled to adjust his accounts with the Auditor of *353 the Treasury for the War Department, it being agreed between them, however, that the payment of the money should not prejudice his right to recover the same from the defendants. He therefore maintains that by so doing he surrendered none of his rights to recover the money so paid. On the other hand, defendants insist that, irrespective of the merits or equities of the controversy, there can be no recovery of said sum by the plaintiff, because said payment was voluntarily made by plaintiff, and inasmuch as neither mistake of law, fact, nor duress is alleged by him, such payment must be regarded as final and conclusive.
It seems from the findings of fact, that the refunding of the $4,860 by plaintiff was simply an intent to restore the status quo ante, and to leave the matter open for future adjustment by the officials of the Treasury Department, or by the courts should it be necessary to appeal to them for relief. The refunding was done at the request of the agent of the defendants; the plaintiff acquired no benefit from the transaction ; the defendants acquired the money without consideration and have in their treasury a fund which in equity and good conscience they should not retain. (Carter v. Riggs, 112 Iowa, 245; Lyman v. Lauderbaugh, 75 Iowa, 481; Juneau v. Stunkle, 40 Kans., 756; Guynn v. Guynn, 31 S. C., 482; Putnam v. Dungan, 89 Cal., 231; Stipp v. Johnston, 68 Ill., 176; and Ellis v. Jacob, 17 N. Y. App. Div., 471.) The elements essential to a voluntary payment are clearly wanting.
For the reasons above set forth judgment is awarded for the plaintiff against the defendants for the sum of $4,860.