Booth, J.,
delivered the opinion of the court:
The Little Falls Knitting Mill Company, a New York corporation, entered into a contract with the Deputy Quartermaster-General, United States Army, for the manufacture and delivery of 92,000 knit wool undershirts. The contract was dated September 2, 1898, and called for the delivery of 2,400 garments on September 23, 1898, and an equal number each day thereafter until the contract was fulfilled. There were the usual stipulations in the contract respecting the detail of manufacture, inspection, workmanship, etc. The issue presented by the present controversy hinges, however, upon two clauses of the contract, one of which provided in terms that the contract should be subject to the approval of the Quartermaster-General, United States Army; and the other *17 that in the event of failure upon the part of claimant company to manufacture and deliver the shirts as the contract provided, defendants might supply such deficiency by purchase of garments in the open market.
Claimant failed to comply literally with its obligation. Defendants went into the open market and purchased 35,589 garments, charging the difference in cost, viz, $4,135.38, to claimant’s account. This suit is for the recovery of the aforesaid amount deducted from claimant company’s compensation under the contract.
The findings disclose that the contract in suit, although expressly requiring claimant company to commence delivery of undershirts on September 23, 1898, was not approved by the Quartermaster-General of the Army until September 28, 1898, i: e., five days after delivery should have commenced. A contract containing a clause which makes its final execution dependent upon the approval of the head of a department, or some supervising official of the Government, is not a binding obligation until such approval is had. (Monroe v. United States, 184 U. S., 524.)
The failure of the Quartermaster-General to approve the-contract as above set forth operated as a waiver of the time limit stipulated therein and charged the claimant company with a performance of its obligation within a reasonable time subsequent to said approval. (Ittner v. United States; 43 C. Cls., 336, and authorities there cited.)
It is apparent from an examination of the contract as a whole that celerity of performance was an essential feature. The quantity of garments desired and the dispatch with which they were to be supplied indicated an immediate necessity of clothing the army, then engaged in war with Spain. Claimant company undertook in its agreement to supply, subject to rigid conditions of inspection, workmanship, fabric, and color, 92,000 shirts within thirty-nine days from date of the first delivery. It further agreed to manufacture and deliver 2,400 of said garments within 'twenty-one days from the execution of the contract, or suffer deduction for failure so to do, thus fixing in express terms, by an obligation under seal, that the time mentioned therein Avas sufficient within Avhich to begin performance.
*18 While it may not be said that the time fixed in the original obligation and subsequently waived by operation of law determines irrevocably the question of reasonable time for performance of a contract, yet it is a strong circumstance, exceedingly persuasive, and tends with much force to determine the limitations of what, under all the attending circumstances surrounding the transaction, may be considered as reasonable time for its performance.
Claimant herein does not even suggest that the failure of the Quartermaster-General to approve the contract contributed in the remotest degree to the delay in the performance of the same. The findings show that shirts had been made and delivered by them prior to said approval. Notice was served upon them on October 6, 1898, that the garments so manufactured were substantially correct and future deliveries of similar shirts would be received. It clearly appears from the findings that on October 6, 1898, the preliminary stages of preparation, inspection, etc., had been satisfactorily passed, and no reason has been assigned, and no cause shown, why daily deliveries from that date hence should not have been made. No objections whatever were thereafter made by the defendants to the shirts delivered which in anywise hindered or delayed their manufacture. It was not until October 22,1898, that claimant company began to comply with the agreement. Defendants’ necessities were urgent, claimant was fully acquainted with the situation, and it was not until October 25, 1898, that defendants purchased any shirts in the open market, twenty-seven days after the approval of the contract. All of the garments thereafter purchased consisted of substantially small allotments, and the prices paid were certainly as near the claimant’s contract price as possible to obtain.
One item of the claim, we think, is allowable. Claimant manufactured and delivered under its contract 63,130 undershirts. Defendants purchased in the open market 35,589 undershirts. Thus it appears that the total number of shirts obtained under the contract was 98,719. Claimant’s obligation only extended to the manufacture of 92,000, leaving a surplus, under the agreement, of 6,719 undershirts. Defendants in making settlement with the claimant company *19 applied the 6,719 undershirts manufactured, labeled, and stamped (as the contract required) under the contract of September 2, 1898, to a subsequent agreement entered into between the same parties on November 28, 1898. Defend-, ants were without authority to do this. The contract of November 28, 1898, was not even in existence at the time of the delivery of the 6,719 undershirts, and claimant company having designated the entire lot as manufactured under the contract of September 2, 1898, and defendants having so accepted the same, can not of their own motion retain the delivery and subsequently apply them to another and wholly different transaction. Defendants, by this transaction, purchased 6,719 undershirts more than the contract allowed, and deducted a corresponding amount from claimant’s compensation. The average price paid for shirts last purchased in the open market was 66-)- cents apiece. Claimant will therefore be awarded judgment for $638.30.