Atkinson, J.,
delivered the opinion of the court:
The claimant in this case entered into a contract February 3, 1902, with the Engineering Department of the United States Army to furnish and deliver on board of cars, Minnesota Transfer, Minn., the steel work for certain bear-trap sluice gates which were to be used in connection with the improvement of the Mississippi River between St. Paul and Minneapolis, for the sum of $14,957. When final settlement was made with the contractor, the Auditor of the Treasury for the War Department, upon the advice of the Comptroller of the Treasury, withheld the sum of $6,662.40 as loss, damage, and expense to the Government for failure to comply with certain provisions of the contract, and for the recovery of said amount this suit was instituted.
*185 The essential provisions of the contract are in the language following:
“ 2. In the case of failure of the party of the second part to commence the performance of this contract on the day specified herein, or thereafter to prosecute it faithfully and diligently according to the terms thereof, the party of the first part shall have the right to annul the contract by giving notice in writing to that effect to the party of the second part, and all the rights of the said party of the second part under this contract shall thereupon cease and determine.
“ 8. All supplies and materials furnished and work done under this contract shall, before being accepted, be subject to a rigid inspection by an inspector appointed on the part of the Government, and such as do not conform to the specifications set forth in this contract shall be rejected. The decision of the engineer officer in charge as to the quality and quantity shall be final.
“ 4. The said New Jersey Foundry and Machine Co. shall commence the work herein contracted for within ten (10) days after date of signature of this contract, and shall complete the delivery of the same within eighty (80) days from such date of commencement.
“ 5. In case of failure of the party of the second part to complete this contract as specified and agreed upon, the party of the first part shall have the right to complete it, by contract or otherwise, and to deduct any excess of cost over the price herein stipulated to be paid for such completion from any moneys due or to become due the. party of the second part hereunder.”
The specifications, which are made a part of the contract, required the steel' castings to be made in a specific manner, and while the contract provides that the decision of the engineer officer in charge shall be final as to the quantity and quality of the castings, it does not give him authority over any other feature of the work, nor is any penalty imposed on any account whatever. There is an entire absence of the usual clause of government contracts making a contractor liable for expenses, damages, cost of inspection, and superintendence. Section 5 gives the Government the power to complete the work in case the contractor should fail to do so and authority is given therein to charge against it any excess of cost above the contract price.
*186 The purpose of a contract in writing is to set out the intention of the parties, define their rights, and declare their responsibilities. That which is not within the contract is no part of it unless mutual mistake is shown. Whatever may have been said or done by the parties prior to the execution of a written contract must be treated as merged in it, and no liability by either party can attach, save that which is set forth in the writing. A contract having been reduced to writing and signed by the contracting parties, the liability of each party must be measured thereby. (Sanger & Moody v. United States, 40 C. Cls. R., 71; 2 Pars. on Contracts, 7th Ed., side p. 516; Sutherland Stat. Con., 327; Hawkins v. United States, 96 U. S., 697; Chitty on Con's., 10th Ed., 62; Toussaint v. Martinaut, 2 T. R., 100; Cutter v. Powell, 6 id., 320; Ferguson v. Carrington, 9 B. & C., 59; Atherton v. Dennett, Law Rep., 7 Q. B., 327.)
We are of the opinion that there was no rescission or abandonment of the express contract, both parties having placed themselves upon paragraph or section 5, which is the only provision of the contract looking to damages, and it only protects the defendants in case of failure on the part of the claimant by allowing them to withhold, in final settlement, any sum in excess of the stipulated price which they might be required to pay for such material, should they be required to finish the same or relet the work to another contractor. The contract being silent as to damages, there can be no justification for the charge against the claimant for pumping the cofferdam and for any part of the salary of the engineer superintendent, as was made by the Treasury Department in this case.
But if even the contract had provided for a penalty for delay in its performance, an extension of the time in which the work was to be completed would operate as a waiver of a penalty during the period of the extension in the absence of a contrary provision. (Ittner v. United States, 43 C. Cls. R. 336.) The contract was signed February 3, 1902, and it was thereafter ascertained and conceded that the Government’s plans and specifications were defective in that they were impracticable and could not be executed by the con *187 tractor. Consequently on May 13 the time for the completion of the contract was extended to June 8, allowing a different method of manufactured material to be substituted, as set forth in Findings III, IV, and V. This extension of time and the change in the construction of material are admissions of the agents of the defendants of their own neglect or lack of expert knowledge in preparing the specifications for the kind and character of the material to be used by the contractor. It was, therefore, their fault that the claimant did not and could not complete its contract within the time specified, and hence it would be entitled to reasonable time in which to complete the work. (Ittner v. United States, supra; Myerle v. United States, 33 C. Cls. R., 1-27; Bentley v. State, 73 Wis., 416; Beswick v. Platt (Pa.), 21 Atl. Rep., 306; Stout, Hall, and Bang's case, 27 C. Cls. R., 385, 387; Amoskeag Co. v. United States, 17 Wall., 592, 595; International Co's case, 13 C. Cls. R., 209, 216; Lister v. United States, 1 C. Cls. R., 52, 57, 58; Gleason v. United States, 175 U. S. R., 588, 609.)
No damage to the defendants is shown; but it is shown by the findings that the claimant sought to comply with the specifications of the defendants, which could not be carried out, and at practically double the cost fixed by the contract it .furnished the requisite material to make its contract effective. Furthermore, the pumping of the cofferdam was not required by the terms of the contract to be pumped by the claimant, nor was the pumping due to its fault. In view of these facts our conclusion is that the claimant is entitled to recover judgment against the United States in the sum of $6,600, covering the amount withheld for pumping in the west side of the cofferdam for the period of eleven months, amounting to $4.950, which deduction was not justified by the contract, and the sum of $1,650 withheld as two-thirds of the salary of the local engineer in charge of the construction of the dam, which deduction also is not justified by the contract or the evidence. Items 1 and 2 in Finding VIII for the cost of rewelding defective rods and reworking forgings are disallowed.
Howry, J., being absent on account of illness, took no part in the trial or decision of this case.