Booth, Judge,
delivered the opinion of the court:
This is a suit to recoyer damages for an alleged breach of contract and now comes before the court on the claimants’ motion for a new trial and to amend findings. The claimants, Normile, Fastabend & McGregor, copartners, entered into a written agreement to construct a lock and dam in the Yamhill River in the State of Oregon, a keeper’s dwelling house and necessary buildings appurtenant thereto, and do a certain amount of dredging in the channel of said river near the lock site. The contract was dated March 11, 1898, approved March 24, 1898, and called for the completion of the work by December 31, 1898.
The controversy is largely one of fact, the legal propositions involved being in a large measure elementary and established.
The first items for which claim is made grow out of the delay in procuring title to the sites for the lock, dam, and keeper’s dwelling house by the defendants. Finding II recites the undisputed history of this proceeding. Specification 41 expressly warned the contractors that operations under the contract must await the purchase of sites for the commencement of the work. While celerity of performance was an essential part of the agreement, as evidenced by the dates therein, still there is sufficient in this express condition to anticipate delay. The gravamen of claimants' petition respecting this item is the unexplained delay between May 13, 1898, and June 14, 1898, during which period the whereabouts of the deed seems to be a mystery. On May 13, 1898, the district attorney at Portland advised Captain Fisk of the clearance of title and the perfection of the conveyance, but the deed was not recorded and no further proceedings respecting the same had until June 14, 1898, one month and one day later. The whole period of *82 time consumed in the consummation of said transaction, from the date of the approval of the contract until the recording of the deed, was two months and twenty days. The last month of this period, under this record, is clearly chargeable to the defendants’ neglect, and if shown to have been the proximate cause of the subsequent loss would entitle claimants to a judgment therefor. Finding IV, however, discloses the fact that claimants disregarded the express conditions of the contract and began active operations under it on May 12, 1898, and proceeded toward its completion with commendable alacrity. It is asserted in their behalf that they “took a chance;” that their efforts minimized the damage, and hence they should not be penalized for so doing. The proposition is apparently sound, but if in assuming a risk in the performance of an agreement the contractor performs without authority that which he is subsequently authorized and empowered to do and the whole work tends to advance and discharge his positive agreement, it must of necessity come within the authorized written contract. In other words, if the record discloses that the delay in securing title to the property did not unduly and unreasonably retard the contractor in the performance of the same, he can not recover. Little Falls Knitting Co. v. United States, 44 C. Cls., 1. The contractors herein were obligated to proceed as provided in specification 41, which defined, limited, and explained the conditions surrounding the undertaking. Prior negotiations, expectations, and conversations were all merged into the written agreement and the rights and liabilities of the parties must be determined thereby. Brawley v. United States, 96 U. S., 168-173.
It is true that subsequent to the Spanish war prices of both labor and material used in this kind of construction began to advance, and have continued to advance. War was declared on April 25, 1898. There was no delay for which defendants are chargeable prior to May 13, 1898, and this condition would have obtained to a more or less extent despite the delay of one month prior to June 14, 1898.
Claimants were at work under the contract. The findings show that in addition to their inexperience in this particular class of work they were in fact assembling material in the orderly prosecution of the work. They were in no position *83 to receive or care for large consignments of cement or other materials. The delay in the approval of the deed and the notification to proceed with the work was too remote to attribute these losses to that event.
The remaining items resting upon the alleged delay in procuring title to the site necessarily follow the disposition made of the one mentioned in Finding V, and will be dismissed.
The item claimed for under Finding VI is not recoverable under the facts. The work charged for was performed for the express benefit of claimants, and under a distinct understanding that the defendants had no funds available to pay for same. There was no contract, express or implied, for this particular portion of the work, and no proof as to the expense attendant thereon. The same was voluntary.
The claim under Finding VII has to do with the erection of a temporary cofferdam. It was indispensable to the successful completion of the work that a temporary structure of this sort be erected to enable the completion of the permanent wing dam, which extended from the lock wall to the opposite bank of the river. There were no plans or specifications concerning the character of cofferdam or going into detail of construction; in fact there was nothing said about it in the contract or specifications. It is conceded, however, that it was a necessary adjunct to the carrying on of the work. Without it the wing dam could not have been constructed. The engineer officer in charge of the work designated the location of said cofferdam. The claimants proceeded to erect the dam at said location, and were thrice unsuccessful in the attempt. It is manifest from the findings that said location was impossible. Subsequently said cofferdam was relocated and successfully built. The evidence in the record upon which Finding VII has been predicated is quite conflicting. It has not been free from doubt and difficulty. The engineer officer in charge of the work admits suggestions and limited supervision over the site and construction of the cofferdam. The claimants unquestionably acted upon these suggestions as commands. The plans and specifications expressly directed the erection of the cofferdam at a sufficient distance away from the lock as not to endanger the same. The engineer officer in charge was charged with seeing that *84 tbe location of said cofferdam did not overreach the completed structure. He was in command; his authority under the contract was plenary; he undoubtedly could have prevented the erection of the cofferdam at any point which might interfere with the advancement of the work or at all endanger that already completed. As was said by the court in Moore, Receiver, 46 C. Cls., 139, No. 27477, decided January 10,1910: “The Government was largely interested in the performance of the details of this contract from the very beginning of the work. It had agreed that monthly estimates should be made by its engineer in charge as the work advanced, and that 90 per cent of such estimates should be paid to the contractors from month to month. A mere statement of this fact shows that ordinary prudence demanded that the Government should have general supervision of the work as it progressed, and the claimants had agreed to this as above quoted.”
Under all the circumstances in this case it seems hardly possible that the claimants would have three times attempted the erection of a temporary cofferdam in one place unless obligated so to do. The engineer officer in charge was required to use ordinary care and skill in giving directions, and the defendants’ liability is limited to such acts as by the use of ordinary care and skill could have been foreseen and prevented. See Moore case, supra, and authorities cited.
The loss occasioned by the failure of the first cofferdam does not come within the rule. There is nothing in the record which would sustain a finding of want of ordinary care and diligence in making the location in the first instance. The two subsequent losses are recoverable. The break in the first dam was sufficient notice to the engineer officer in charge that the location was precarious, and the second destruction augmented the necessity for the exercise of greater care and foresight. The claimants should have been relieved from this unnecessary and burdensome labor, and saved their loss of time and money.
The final claim for the retained percentages, except as to the item of $925 shown in Finding VIII, is devoid of merit. The contract work was not completed until 1900. The engineer officer was exceedingly liberal in granting exten *85 sions. The contractors neglected to employ a competent civil engineer, which., together with their lack of experience in work of this character, unduly retarded the completion of the same. There is nothing in the record which brings this item of the claim within specification 35 governing the subject of extension.
The claimants’ motion for a new trial is allowed and the motion to amend findings allowed in part and overruled in part. The former findings and judgment are vacated and set aside and opinion withdrawn. New findings of fact, conclusion of law, and amended opinion are this day filed entering judgment for claimant in the sum of $4,125 on Findings YII and VIII. The petition otherwise is dismissed.