BarNey, Judge,
delivered the opinion of the court:
This suit was originally brought in two separate actions to recover, respectively, the sums of $1,207.82 and $2,100.01, which were deducted by the defendants in its final settlement with the claimant on two separate contracts, as well as for meals and lodgings furnished the defendants’ employees during the delay period hereinafter mentioned. These deductions were made for the cost of superintendence and inspection during the period of delay on one of the contracts for 50 days and on the other for 60 days.
Both of the contracts were for dredging work on the Delaware River on sections adjoining each other, one called “ subsection 5A” and the other “ subsection 5B.” The contracts were identical in every particular except as to the location of the work to be performed. Copies of these contracts were attached to the petition in these suits and made a part of the same. They both provide that the work was to be completed by June 30, 1908. These two suits have been consolidated by order of the court and, except as to the date of final completion of each of them, are treated in this opinion as one contract.
The bids for this work .were submitted by the claimant pursuant to advertisement theretofore published on the 16th day of November, 1907; on the 6th of December following the claimant received notice from Maj. Sanford, the Government engineer, and who is located in the city of Philadelphia, Pa., in charge of the work, that its bid had been accepted. January 2, 1908, the claimant received from Maj. Sanford the contracts for the performance of this work *357 signed by him for the defendants and dated December 31, 1907; the claimant executed them on its part and returned them to Maj. Sanford on January 6, together with the bonds required. They were approved by the Chief of Engineers at Washington on January 23, and on January 27 the claimant received notice of such approval.
June 23, 1908, the claimant addressed a letter to Maj. Deakyne, the Government officer then in charge of the work, stating in substance that it would not be able to complete the contracts within the time limit and requested an extension of time for such completion till August 31, 1908. On June 27 Maj. Deakyne addressed letters to the claimant waiving the time limit for a reasonable period, but stating that the claimant must bear such expenses due to such waiver as were properly chargeable under the contracts. The work under the contract for subsection 5A was completed August 19, 1908, and on subsection 5B August 31, 1908, and accepted by the defendants. Upon final settlement with the claimant the defendants deducted all of their expenses for superintendence and inspection during the whole of such delay period under one contract for 50 and the other for 60 days.
It is contended by the claimant that no such deductions should have been made, as it claims that the extension of time above noted was required to complete the work under the contracts because of delays on the part of the defendants which retarded the work more than the period of extension.
The court has found as an ultimate fact that the defendants took 30 days more time than was reasonably necessary in getting the contracts to the claimant with notice of approval.
The statement of the case hereinbefore made gives the history of this whole question from the submission of the bids till the final approval of the contracts, and the decision upon the point in question is doubtless one of law rather than of fact. It seems, however, proper to call attention to some of the admitted facts in the case, which have led the court to make the ultimate finding of fact mentioned. The bids were opened November 15, 1907, but the contract, duly *358 approved, never reached the claimant before January 27, 1908, or 73 days thereafter. None of this delay was chargeable to the claimant. On the contrary, the findings show that it was unusually diligent in doing its part in expediting matters, as it received the contracts executed on the part of the Government January 2, 1908, and within four days executed them on its part and forwarded them to the proper officer of the Government, together with the bonds required. Time was of the essence of the contract, and there is nothing in the record showing any lack of diligence on the part of the claimant in executing the contracts after it was permitted under their terms to begin the work, which shows that it needed every day allowed to complete the work within the time limit. Taking these facts into consideration, we think that the finding that the defendants took 30 days more time than was reasonably necessary to get the contracts to the claimant, with notice of approval, is justified.
The findings show that dredging work in the Delaware River can not usually be done in the month of January, and the Government contends that this fact excused it for its delay, though the findings show that in the winter of 1907-8, when this work should have been in progress, dredging work on the Delaware River could have been done during the whole month of January. We do not think this contention is sound. If Providence favored the claimant by bestowing an open winter, during a part of which this work could have been carried on, we do not think the Government could by its negligence deprive it of this advantage. The claimant had the time limit named in the contracts, which was some time between November 15, 1907, and June 30, 1908, within which it was to do this work, and not of some other year or the average of years. How would the case stand if the opposite contention was made? Suppose the findings showed that in normal years dredging work could be done on the Delaware River during the whole winter, but that the winter in question was an abnormal one and the river was frozen so solid that no work of this kind could be done during the months of January and February. In such a case would the .Government not rightfully contend *359 that the unnecessary time taken in approving the contracts did not delay or injure the claimant ?
Some evidence was introduced by the Government tending to show that the claimant was not so situated as to begin work under these contracts before it actually did, because of the fact that it had its dredges employed elsewhere. While such evidence was so obscure as to hardly justify a finding upon that subject, we do not think such evidence was material under the circumstances of this case. A similar question was involved in Pickney v. United States, 46 C. Cls., 77, 90, and this court said: “ What right have we to assume that if the notice had been given in time to require completion within the terms of the contract the claimant would not have employed a sufficient force for that purpose? ”
A similar question arose in the case of Morse Dry Dock & Refair Co. v. Seaboard, &., Co., 161 Fed. Rep., 99, and the court said: “ The respondents’ contention is based upon an assumption which it had no right to make * * *. It can not assume that its failure to perform its obligations made no difference. It is imposible to say what might have happened had the conditions been different.” In the case at bar what right have we to assume that the claimant would not have purchased or hired other dredges even if all it then owned were employed elsewhere®
It is now settled, at least in this court, that when time is of the essence of the contract and the Government by its delay prevents performance within the contract time such delay will operate to waive the time limit and give the claimant a reasonable time within which to perform. Ittner v. United States, 43 C. Cls., 336; Little Falls Knitting Co. v. United States, 44 C. Cls., 1; Callahan Construction Co. v. United States, 47 C. Cls., 229; Laidlaw-Dunn-Gordon Co. v. United States, 47 C. Cls., 271. And an extension of time coextensive with the period of delay will be assumed reasonable in the absence of proof to the contrary. Callahan Construction Co. v. United States, supra.
In the Callahan Construction Co. case, as well as the Laidlaw-Dunn-Gordon Co. case, the delays caused by the Government, and for which an allowance was given, were identical in character with those in this case.
*360 It might, perhaps, be urged that by signing the contracts January 6, 1908, the claimant thereby waived any right to take advantage of the delay of the Government; also, that by undertaking the completion of the work after the contracts had been approved January 23, 1908, it waived such right. In answer to this it may be said that the claimant had the right to assume that if the Government was reasonably diligent after the contracts were sent to it January 6, 1908, in notifying it of their approval it would still have had nearly the whole month of January within which to begin the work. Further than that, the claimant was under bonds to sign the contracts and was also under bonds after the contracts were signed to perform them. It would have been a hazard which we do not think the claimant was bound to incur, if it had either refused to sign the contracts when they were received or to perform them after receiving notice of their approval. We believe rather it had the right to assume that the time limit for their execution would be reasonably extended.
Had it not been for section 3744, Eevised Statutes, requiring contracts with the War Department to be in writing, signed by the parties at the end thereof, the bid of the claimant and its acceptance by the Government would have constituted a valid contract. Harvey v. United, States, 105 U. S., 671. In lieu of that manner of making contracts, the statute cited provides that contracts with certain departments of the Government shall be executed in the manner stated, and the Supreme Court has held that that statute is mandatory and that contracts made with such departments are absolutely void unless so executed. The Government secures itself, however, by compelling the party bidding to enter into a bond to execute the contract as provided by section 3744, if his bid is accepted. The bidder is without any remedy in the event the Government should refuse so to do. He must bide his time till the Government sees fit to act, and when it does act he must acquiesce or take his chances to have his bond sued. The statute referred to and the practice of the departments to which it is applicable makes this kind of contract sui generis, and the or *361 dinary rules of law as to waiver of rights by signing and beginning the work under a contract should not be applied. That to do so would be harsh, oppressive, and unjust needs no argument to show. We do not think the Government demands, or has any right to demand, any such construction.
If the contract in this case was to have been performed within a stated time designated as a certain number of days, months, or years after the. execution of the contract, it would present a different question, but it was to be performed before a certain day named. In cases arising under the first class of contracts mentioned, it might well be said that by undertaking to perform the contract the contractor had waived any delay in its execution. Where, however, as in this case, the contract is to be performed before a certain day stated, it would seem reasonable that where there is unreasonable time taken by the Government in its execution and approval after the acceptance of the bid, the day before which performance was required should be set forward for a time corresponding with this delay. In other words, when a contractor has made a bid to perform work before a certain day, he has a right to presume that the contract will be executed and approved within a reasonable time, and if this is not done, that the time limit will be correspondingly extended:
It may be both interesting and important to note that in the Callahan Construction Co. case, supra, the work was to be performed before a day certain; and in the record in that case it appears that the Government engineer in charge of the work recommended that the time limit be extended, in the following language: “As a matter of justice, also, the time of completion of the contract should be extended to compensate for delay in approval of the contract,” and accordingly the time was extended.
No distinction between delays on the part of the Government occurring during the execution of a contract, as in this case, and delays occurring during its performance, has ever been made by either party in the presentation of these cases. That question has been presented for the first time in conference upon this case, and we realize its seriousness *362 and importance, but do not feel called upon at this time to overthrow the doctrine of so many cases in this court, especially in view of the fact that the Government has never appealed from our decision in any of them.
We shall enter into no extended discussions of the other delays complained of by the claimant. We believe the findings clearly show that they did not impede the claimant to any appreciable extent in the. prosecution of the work. Some unforeseen circumstances causing obstruction are to be anticipated in any considerable undertaking and particularly in work of this character. We do not think the Government officers in charge of the work were properly chargeable with any neglect or unreasonable conduct of which the claimant can complain.
It follows from the foregoing that the claimant is entitled to recover for the deductions made from the contract price on account of cost of inspection and superintendence for a period of 30 days, together with the agreed price of meals and lodgings furnished during that time, being in all the sum of $1,964.11, and it is so ordered.