Downey, Judge,
reviewing the facts found to be established, delivered the opinion of the court:
There are three amounts which it is contended the claimant is entitled to recover, and consideration of the one which it seems to us presents the real subject of controversy may best receive our attention by first disposing of the other two. They are stated by counsel as follows:
1. Admitted balance------------------------------------$3, 711. 86
2. Erroneous deduction_________________________________ 5, 500.00
3. Cost of making changes____________________________ 4, 375. 74
Item 1 is a retained percentage of 25 per cent, which is admittedly due, but has not been paid because of the prescribed condition attached to its payment that the claimant should execute a release of all debts, claims, or demands on account of the contract.
Item 3 is a claim for cost of making changes on the theory that the contract conditions of the test were not complied with, and it was therefore never properly ascertained that the pumps as originally furnished did not corfiply with the requirements, as to which it is sufficient to say that under the conditions of the tests actually made the claimant’s representative conceded that they did not meet the contract requirements, and independent of such concession the court can not conclude otherwise than that as a matter of fact they did not meet such requirements.
The remaining item, 2, is the amount of deduction under the liquidated damage clause for the period from May 4, 1907, to March 31, 1908, inclusive, 278 days at $20 per day, alleged to be erroneous.
*13 It is contended by claimant that the clause in this contract providing for liquidated damages is not an enforceable provision as such, because the contract is for 10 separate units and the damage for nondelivery of one is the same as for nondelivery of all; but there are other matters for consideration which may render the determination of that question unnecessary.
The contract as written was for delivery f. o. b. factory. The final date for its performance was April 3, 1907, extended to May 3, 1907. The test was a factory test which was to be made within the contract period, and the only conclusion to be drawn from the whole contract is that when the pumps had been satisfactorily tested at the factory under the supervision of the Government’s representative and found to meet the requirements and had been delivered on the cars they were there delivered to the Government as its property and as pumps accepted under the contract. The various paragraphs of the specifications sustaining this view need not be referred to in detail.
The letter of August 25,1906, attached to the contract, was written after the bid was made by the claimant, but before the date of the contract. It was in the alternative as to the place of test, prescribing certain conditions if the test was to be made at Garden City, but did not then change the contract in this respect. Indeed, there seems to have been no final conclusion that the contract was to be modified as to place of test until December 6, 1906. It appears from evidence, but not deemed material to the findings, that during this period the claimant was investigating as to whether the prescribed conditions for the test might not be found at the works of the electric company at Schenectady, where the pump motors were to be made.
From correspondence referred to in Finding IY, it appears quite conclusively that it was thereby agreed that Garden City was substituted as the place of delivery and of “ the final acceptance test.”
The conditions of the letter of August 25, if the test should be made at Garden City, then became operative, and in lieu of the original contract it was agreed (1) that the test should be made at ©arden City instead of at the fac *14 tory; (2) that it should be made within 60 days after delivery at Garden City; and (3) that payment should be deferred until acceptance after such test.
It follows from the facts stated that there was a material change in the contract conditions. As originally written, the contractor was required to complete the machinery and test it at the factory, and deliver it to the United States f. o. b. cars at the factory by a date certain. The period required for testing necessarily preceded the prescribed date of delivery, and was included in the contract period. The court will know without proof upon the question that Garden City is far removed from the claimant’s plant at Camden, and that some considerable period of time must necessarily be required to transport machinery from Camden to Garden City. What that period of time is the court is not informed by evidence and can not judicially know. It is a matter of common knowledge that the time occupied in the transportation of freight between two such remote points is uncertain.
It is beyond the pale of reason to assume that under the modified contract the claimant was required to complete the machinery at such time in advance of the date limited for delivery at its factory that it might be on that date delivered to the Government at Garden City. And if by the terms of the modified contract the claimant was required to deliver the machinery to the Government at Garden City at some date subsequent to that prescribed for delivery on the cars at its plant under the original contract, we are not informed by any contract stipulation between the parties as to the date when it was required so to deliver. For some purposes under such conditions it might readily be said that delivery was required to be made within a reasonable time, but “ reasonable time ” is a term of such flexibility that it can seldom, if ever, furnish a satisfactory basis for the enforcement of a contract for liquidated damages.
The Government in this case has charged the contractor with liquidated damages from the 3d day of May, the date originally provided for delivery on the cars at the claimant’s plant extended 30 days. It might be contended at first blush *15 that notwithstanding the changed conditions as to the place of delivery and the place of final acceptance test it was still to be understood that the contract required shipment of the machinery from the plaintiff’s plant not later than the 3d day of May, and in this connection we are not unmindful of the ordinary rule that where a provision of the contract is modified by subsequent agreement of the parties the new agreement and the unchanged provisions of the old contract will be read together as the whole contract; but this contract in its very essence, so far as testing and delivery and acceptance and payment are concerned, was so radically changed that there seems to be no justification for retaining in the modified contract and applying to the new conditions a provision which in its essence was applicable to the widely different conditions originally provided. In the first instance the machinery was to become the property of the Government under the completed contract at the plant of the claimant in Camden, payment therefor then to become due. Under the modified conditions it was to become the property of the Government after a shipment to a remote point, entailing considerable time, and subsequent testing and acceptance at that point. Paragraph 32 of the specifications requires the pumps to be “ complete and ready for shipment” within the time specified, delivery, by another paragraph, to be f. o. b. cars at factory. The liquidated-damage clause (paragraph 33) assessed the damages as agreed for the failure to “ furnish complete for operation ” within the specified time. The place where the contractor was to “ furnish ”—in other words deliver—the pumps was changed, and as changed necessarily required a considerable additional period of time for the accomplishment of the purpose, and the time of its accomplishment remained unfixed. It would seem that the clause could only remain operative as written on the theory that the contractor became obligated to advance the time of shipment as much as might be necessary to accomplish the “ furnishing ” at the newly designated point within the time originally provided, and that the contractor was obligated to deliver at Garden City by the time fixed. Such a construction seems unreasonable. *16 If we add the suggestion that the “ furnishing ” as originally provided for was to be subsequent to test, as to which there was no specified change, the situation resulting from the modifications is the more complicated and uncertain, since the modifications change the place and necessarily the time of test. The fact appears that the Government in charging liquidated damages from May 4, 1907, to March 31, 1908, fixed the latter date as the date on which the contract was performed, which was apparently a date subsequent to a factory test of the pump returned and is found to be the date on which new impellers were shipped from the factory. This acceptance seems to have been predicated on a factory test which had been waived when the contract was modified and a field test provided for, and was made under a contract which still, so far as appears, provided for a field test and acceptance thereafter.
It is quite apparent from the official statements contained in the record that in fact the Government was not ready to test the pumps when they were first delivered at Garden City; that from the date on which it appears from such official statements that the machinery was to be regarded as having been delivered at Garden City, viz, July 18, all of the 60-day period prescribed for testing had, according to the statement of the Government’s representative, elapsed before the Government could get ready for a test, except that portion of the last day of the 60, viz, September 18, which remained after 4 p. m., and that in fact that day estimated by him to be the sixtieth day after delivery was not in fact the sixtieth day, but was in reality the sixty-second day. But such considerations are perhaps not material to .the determination of the question we are discussing. If they were we would consider also the further facts that the test of September 18, after 4 p. m., was not in reality a test but was evidently for the purpose only of commencing a test within what was assumed to be the 60-day period and that the Government was not then really ready for the tests and that they in fact were chiefly made long subsequent to that date.
We are asked to enforce the liquidated damage clause in the contract from the 3d day of May, 1907. This, we con- *17 elude, we can not do. If it is to be enforced from a subsequent date from which, under the modified contract, the claimant is shown to have been in default, we are required to determine what that date is, and if we are unable to determine that date from any stipulation between the parties, we are confronted with the question as to whether or not a stipulation for liquidated damages may be enforced when the date from which it is to operate is uncertain and may not be definitely ascertained.
In United Engineering & Contracting Co. v. United States, 234 U. S., 236, on appeal from this court, the Supreme Court in its opinion, was discussing chiefly the effect of the delay occasioned by the United States, but it plainly was attaching much weight to the fact that by reason of delays by both parties and subsequent supplemental contracts without definite provision on the subject, there was “no fixed rule for the time of its (the contract’s) completion.”
The Supreme Court in that case cited with approval an English case, Dodd v. Churton, L. R., 1 Q. B., 562, which had been cited by Chief Justice Peelle in his consideration of the same case as sustaining his statement that “liquidated damages bind both parties, and to be enforceable as such must have a definite date from which to run.”
In Mosler Safe Company v. Maiden Lane S. D. Co., 199 N. Y., 479, it is said:
“ Where the parties are mutually responsible for the delays, because of which the date fixed by the contract for completion is passed, the obligation for liquidated damages is annulled, and in the absence of some provision under which another date can be substituted, it can not be revived.”
The application of the principle is found not necessarily in mutual delays, but in the mutual changing of the place, and consequently and necessarily of the time and conditions of delivery.
In Willis v. Webster, 1 App. Div. (N. Y.), 301-305, it is said;
“It is impossible under the contract to apportion liquidated damages. Either the liability for the liquidated damages exists, or it does not. It can not one-half exist and one- *18 half be waived. In the case at bar there was a definite contract which was abrogated by the acts of both parties, and it requires equally concerted action to breathe life into it again.”
But it would seem hardly necessary to elaborate or seek further for authorities to sustain the rather self-evident proposition that if we are to enforce a liquidated damage clause we must be able to fix the day from which it is to operate, and if we can not fix that day either by specific stipulation of the parties or by reasonable construction of stipulations we are not justified in attempting to fix it by guesswork. The very nature of a liquidated damage clause, and especially one under which the aggregate of damages is to be determined with a per diem rate as the basis of the computation, requires the fixing of a definite date which must be determined from the contract.
There are other questions as to this particular item in this case which would require consideration if a different conclusion were reached on the point discussed, but since it must be concluded that the deduction of the stated amount as and for liquidated damages was unjustified for the reasons stated it is not regarded as necessary to discuss other questions.
We conclude that the claimant is entitled to judgment for $9,271.86, as shown in the conclusion of law, and it is so ordered.
All judges concur.