Williams, Judge,
delivered the opinion:
The plaintiff, on October 17, 1919, entered into a contract with the Navy Department, through the Bureau of Yards and Docks, whereby the plaintiff agreed to construct and complete, at the Naval Academy, Annapolis, Maryland, an addition to the existing power house, including roof drainage and electric lighting systems, and to construct timber pile and concrete foundations for an ash bunker, and make certain alterations to the existing building.
The plaintiff was to receive the sum of $81,877 for the completed work. The contract further provided that for each timber pile in place, based on the length of 55 linear feet, measured from point to cut-off, in excess of or less than the number called for on the drawings, there was to be added to or deducted from the sum of $81,877 the sum of $41.25 or $27.50, respectively; and for each linear foot of timber pile in place in excess of or less than 55 linear feet measured from point to cut-off there was to be added to or deducted from the amount the sum of $0.75 or $0.10, respectively.
The work was to be completed within 110 calendar days and was to be performed in accordance with certain specifications prepared by the Bureau of Yards and Docks and made a part of the contract. The plaintiff completed the contract 210 days after the time specified and was paid the full contract price, together with certain additional amounts allowed for extras under change orders, less the sum of $2,025, *573 deducted as liquidated damages, and $434.22, withheld by the Government on the execution of the qualified release.
The plaintiff in this suit seeks to recover a sum aggregating $22,145.25, based on the following items:
(1) For excessive cost of the piling work resulting from insufficient and misleading information furnished by the defendant as to the subsurface conditions at the site of the building_$10,135.58
(2) Extra cost of face brick on account of the arbitrary and unreasonable delay of defendant in making approval of the brick to be used_ 797. 65
(3) Damage and loss occasioned by reason of 210 days’ delay in completing the work caused by the action of the defendant_ 8, 615. 86
(4) Liquidated damages assessed and retained by defendant from amount due under the contract for 27 days’ delay_ 2, 025.00
(5) Difference between the amount claimed by plaintiff and the amount allowed by the defendant on account of extra cost incurred in redriving and retesting 28 rejected piles_._ 136. 94
(6) Amount retained by the defendant (2%) on the execution of the qualified release_ 434. 22
These claims will be considered in the order of their statement.
(1) Claim for $10,135.58 based on loss and damage sustained on account of extra costs of doing the 'piling work.— The building was to be erected of heavy reinforced concrete, constructed on a pile and concrete foundation. In estimating what the cost of the piling work required under the contract would be the plaintiff relied on the provision of paragraph 19 of the specifications, that “ For purposes of estimating, proposals shall be based on the length of pile in place between point and cut-off of fifty-five feet,” and on the plans shown to its representative by the public-works officer, as correctly showing the subsurface condition at the site where piles were to be driven.
Paragraph 187 of the specifications provides that “ such information as the Government possesses regarding sewers, pipes, and other construction beneath the surface of the ground on the site of the work may be obtained from the *574 public-works officer at the Naval Academy.” The plaintiff had a right to rely upon this representation and to assume that the plans submitted to its representative, purporting-to show the subsurface conditions at the site, contained all the information in the possession of the Government relating-to that matter, and that they revealed the true subsurface conditions at the site.
The existence of a sunken sea wall running diagonally across the site, which seriously impeded the work of driving the piles and greatly increased its cost to plaintiff, was not shown on„ the plans exhibited by the public-works officer to plaintiff’s representative, although such plans had been prepared by the Navy Department before that time, and were-then in the possession of the Government. The failure of the defendant to disclose this information to the plaintiff amounted to a deceptive representation of the subsurface conditions at the site. The fact that the public-works officer did not have the plans showing the sunken sea wall in his-possession, and did not know of their existence at the time-he talked with plaintiff’s representative, and that he acted in good faith, believing he was furnishing plaintiff with all the information in the possession of the Government, is immaterial. The plaintiff was entitled to have such information, as to the subsurface conditions, as was in possession of the Government, and not as the defendant contends, only such as happened to be in the possession of the public-works-officer.
The defendant having misled the plaintiff as to the existence of buried construction beneath the surface of the ground where the piles were to be driven, is liable to the plaintiff' for extra cost incurred in doing the piling work which such obstruction occasioned. GKristie v. United States, 237 U. S. 234; Hollerbach v. United States, 233 U. S. 165; United States v. Spearin, 248 U. S. 132.
The fact that the specifications provide that “ The Government does not guarantee the information given to be-correct or that other buried construction will not be encountered, and does not assume any risk or responsibility in-connection therewith,” and that “ intending bidders will have the privilege of examining the site, and they should *575 satisfy themselves as to existing conditions,” does not relieve the defendant from damages arising out of the misrepresentations as to subsurface conditions at the site. United States v. Atlantic Dredging Company, 253 U. S. 1.
The plaintiff has failed, however, to establish by competent proof the extra costs it incurred, if any, in doing the piling work because of the sea wall. The plaintiff made no separate "bid for the piling work. Compensation for this work was included in the lump sum contract price of $81,877, except as that sum might be increased or decreased in accordance with the provisions of paragraph six of the contract, set out in Finding II, and heretofore referred to. Plaintiff has been paid $1,987.45 in accordance with that provision of the contract. 'It is not claimed the amount paid was not properly computed, or that the plaintiff is entitled to a larger .amount under that provision of the contract. The plaintiff, therefore, can recover in respect to the work of driving the piles only such amount as it cost the plaintiff to do the work, in excess of what it would have cost had the sea-wall obstruction not been present. The total cost of the piling work is shown but it does not appear what amount of this cost was occasioned by the sea wall, other than that it was $10,135.58 in excess of what the plaintiff estimated the cost would be when its bid was submitted and the contract was entered into. The fact the plaintiff estimated it could do the piling work for a certain amount is not proof that it could have done the work for that amount except for the sea-wall obstruction. Its estimate as to what the work would cost may have been right or may have been wrong. It is incumbent on the plaintiff, before it can recover, to establish by proof what it actually cost to do the work over and above what it would have cost had the subsurface conditions at the site been such as the plaintiff had a right, from the representations made by the defendant, to assume they were. This the plaintiff failed to do.
(2) Glaim for ext/ra cost of face brick on accov/nt of bu-rearas delay in approval of sample brick. — Paragraphs 49 and 52, of the specifications, provide:
“49. Face Bricks. — Face bricks will be required for all ■exterior exposed surfaces of brick walls. Bricks for face *576 work shall be of a light gray color, and shall equal in quality and match in color the race bricks used in the present building. All face brick shall be of uniform color, assorted for uniform and correct size and for uniformity in color before-shipment from the kiln.
$ $ ‡ ‡ * *
“ 52. Samples of all bricks shall be submitted to the officer in charge for approval previous to the installation of any brickwork.”
Immediately after being awarded the contract the plaintiff made an exhaustive search for the exact match of the face brick on the old part of the building and found that the manufacturer of the original brick was out of business- and an exact duplicate could not be obtained. Thereupon the plaintiff, on November 4, 1919, submitted a brick for approval, Shade No. 120. This brick, which was the nearest match that plaintiff could find for the brick in the old building, was approved April 7, 1920. At the time plaintiff submitted the sample, the face bricks required in the building could have been purchased for $797.65 less than plaintiff had to pay for the same brick, after the sample submitted by it was finally approved. The plaintiff during-this period of delay repeatedly called the defendant’s attention to the fact that the market price of bricks was advancing. The delay of four months in making approval of the brick submitted by plaintiff was unreasonable and arbitrary,, and plaintiff is entitled to recover the amount of the increased cost which it was required to pay for facing brick because of such delay, $797.65. Kelly & Kelly v. United States, 31 C. Cls. 361.
(3) dawn for $8,615.86 on accomvb of delay of MO days-in the completion of the contraet. — The contract was not completed until 210 days after the time stipulated in the contract. The plaintiff contends the entire delay was caused by acts of the Government. We have found, 'as is stated in. the findings of fact herein, that completion of the contract was delayed by acts of the Government 171 days. This delay of 171 days resulted from the defendant’s deceptive-representations as to the subsurface condition at the site where the piles were driven, and from the failure of the de *577 fendant to approve the sample facing brick for more than four months after it was submitted for approval. There is nothing in the record that would justify a finding that the defendant caused any other delay in the completion of the contract. The contracting officer, recognizing the responsibility of the Government for these delays, granted plaintiff an extension of time of 41 days because of the delay in doing the piling work, and an extension of time of 130 days because of the delay of defendant in approving the sample facing brick. By reason of this delay of 171 days, the plaintiff incurred extra costs for superintendence, clerk hire, watchmen, increased labor rates, insurance, field office expense, and rentals amounting to $4,335.81. The defendant is liable to the plaintiff for this amount. United States v. Smith, 94 U. S. 214; United States v. Mueller, 113 U. S. 153; Sanborn v. United States, 46 C. Cls. 254; Edge Moor Iron Co. v. United States, 61 C. Cls. 392.
The act of the contracting officer in granting the* plaintiff an extension of time in which to complete the contract equal to the delay caused by the Government does not relieve the defendant from liability to the plaintiff for losses sustained by it by reason of such delay. Crook Co. v. United States, 59 C. Cls. 348; William Cramp & Sons v. United States, 41 C. Cls. 164.
(4) Claim for $2,025 retained by the defendant, on final settlement as liquidated damages. — The contract provides that in case the work is not completed within the time specified, or within such extension of the contract as may be allowed, liquidated damages shall accrue at the rate of $75 per day, and shall be deducted from the contract price. The contracting officer, on May 27, 1921, determined and held that the plaintiff was entitled to an extension of time of 183 days on account of unavoidable delays on the part of the plaintiff, leaving 27 days of the 210 days’ delay in the completion of the contract for which plaintiff was held responsible for liquidated damages. The sum of $2,025, representing $75 per day for 27 days, was charged against the plaintiff and deducted as liquidated damages.
The rule is well settled that where a contractor’s delay is caused by the other party to the contract, he can not be held *578 responsible for not completing the work within the specified time, New Jersey Foundry & Machine Co. v. United, States, 44 C. Cls. 178; and that where a contractor is prevented from executing his contract according to its terms, he is relieved from the obligations of the contract and from paying liquidated damages, Ittner v. United States, 43 C. Cls. 336; and that where delays in the completion of the contract are •caused by both parties to the contract, and the period for completing the work has thereby been extended beyond the time originally fixed, the obligation to pay liquidated damages is annulled and can not be revived, and any recovery for delays must be based on the actual loss sustained. New York Continental Jewell Filtration Co. v. United States, 55 C. Cls. 288; Camden Iron Works v. United States, 51 C. Cls. 9; United States v. United Engineering & Contracting Co., 234 U. S. 236.
Since the contract was to be completed within 110 calendar daysithe defendant’s delay of 130 days in approving the sample facing brick alone manifestly made it impossible to complete the contract within the time specified, and the plaintiff was thereby released from the contract obligations to pay liquidated damages.
Plaintiff is entitled to recover this item of its claim.
(5) Ampunt claimed on accowmt of extra cost incurred in red/rwing a/nd retesting £8 rejected files. — During the progress of the work in driving piling, the plaintiff was required to redrive and retest 28 piles which the inspector had rejected. The plaintiff was paid $1,426.92 for this extra work. This amount was approved by the chief of the Bureau of Yards and Docks, in Change Order E, dated July 26, 1921, and was accepted by the plaintiff. Paragraph 17 of the spec-fications provides that the decision of the chief of the Bureau of Yards and Docks as to the cost of extra work performed under change orders shall be accepted in full satisfaction for all such work. The allowance for extra work performed in retesting and redriving the piles in question was made in strict accordance with the terms of the contract, and the plaintiff having agreed that the amount so fixed would be accepted in full satisfaction of the work done, can not recover the extra amount claimed, in the ab *579 sence of a showing that the decision of the contracting officer was fraudulent, or so grossly erroneous as to imply bad faith.
(6) Glairn for amount reserved and withheld by the defendant on execution of qualified release. — When final settlement was made with plaintiff for work done in the performance of the contract, plaintiff reserved the right to bring suit on claims amounting to $21,711.03. The defendant withheld two per cent of this amount, or the sum of $434.22, from the amount admittedly due the plaintiff. The plaintiff is entitled to recover the amount withheld. McClintic-Marshall Co. v. United States, 59 C. Cls. 817.
The plaintiff is entitled to recover on items (2) two, (3) three, (4) four, and (6) six of its claim the sum of $7,592.68. Judgment in that amount will be awarded. It is so ordered.
LittletoN, Judge; GííeeN, Judge; and Booth, Ohief Justice, concur.
Whalex, Judge, took no part in this decision, he having heard the case while commissioner of the court.