Littleton, Judge,
delivered the opinion of the court:
Upon the facts presented by the record in this case and set forth in the findings, we are of opinion that plaintiff should not have been charged with penalties for delay in the delivery of the radio transmitting equipment specified in the contract of December 10, 1935, and that it is entitled *244 to recover the amount SO' deducted and withheld from the total contract price otherwise admittedly due. We cannot escape the conclusion that the acts and decisions of the Comptroller General, for which the Government must be held responsible, operated seriously to delay plaintiff in having manufactured and in delivering the twenty-eight radio transmitting equipments called for by the contract. These radio transmitting devices were difficult and expensive to manufacture and the total contract price for the twenty-eight instruments called for was $290,220. It is easy to see, therefore, that the natural result of the positive decision by the Comptroller General, whose approval of warrants had to be obtained by the War Department before any payments could be made under the contract, that no monies appropriated by Congress for use by the War Department were available or could be used by the Secretary of War in making any payments under the contract with plaintiff, for the reason that, as the Comptroller General concluded, the contract was illegally awarded to plaintiff under section 3709 of the Devised Statutes, operated seriously to delay plaintiff. We think it is not important to the solution of the question here presented that the Secretary of War, and not the Comptroller General, was the authorized official to enter into the contract with plaintiff and to pass upon the question whether plaintiff was the lowest responsible bidder within the meaning of section 3709 of the Devised Statutes. Nor do we think the fact that the Secretary of War did not agree with the decision of the Comptroller General is of controlling importance to plaintiff’s right to recover the penalties deducted for failure of plaintiff to deliver certain of the radio transmitting equipments within the time specified in the contract. The fact is that, as an administrative matter, the Secretary could not pay unless the Comptroller approved. The fact remains that the Comptroller General possessed the authority and, for a long period of time, positively asserted that he would not authorize any payments to be made to plaintiff under the contract for the articles therein called for. Although the Secretary of War advised plaintiff, after receipt of the Comptroller General’s decision that no payments could be made *245 -out of appropriated monies for the fulfillment of the contract, that he regarded the contract as valid and expected compliance by plaintiff therewith, he did not at any time advise plaintiff that any payment could or would be made by him for any of the articles specified and called for by the contract. On the contrary, the Secretary of War bound his department by the Comptroller General’s decision by refusing to state to plaintiff that payments would be made under the contract and by entering into negotiations with the Comptroller General in an effort to have the Comptroller General withdraw his decision and authorize payments to be made under the contract as awarded. This the Comptroller General refused to do. The decision of the Comptroller General was rendered February 17, 1936, about two months after the execution of the contract and long before the sample apparatus was delivered or required to be completed and delivered to the War Department. The remaining radio instruments were not to be manufactured or delivered until after the sample instrument had been delivered, approved, and accepted. Thus the matter stood for almost a year, until January 26, 1937, when the Attorney General of the United States, at the request of the Secretary of War, rendered a written opinion in which he held and decided that the contract of December 10, 1935, between plaintiff and the War Department was a valid contract and that the Secretary of War was authorized to expend appropriated monies for making payments to plaintiff for the articles called for by the contract. This •opinion was received by the Secretary of War February 5, 1937. Thereupon the Secretary of War on February 10, 1937, advised plaintiff that upon the opinion of the Attorney General it was the duty of the Secretary of War to instruct that, insofar as the Government was concerned, the terms of the contract would be adhered to- and that “I, therefore, •direct that payment be made to the contractor in accordance with the terms of the contract notwithstanding the expressions of opinion heretofore made by the Comptroller General.” This was the first advice received by plaintiff between February 17, 1936, and February 10, 1937, from the •'Secretary of War, with whom the contract had been made, *246 that plaintiff would, be paid by the department for any of the services to be performed and for the articles called for by the contract.
We can hardly imagine a more justifiable cause for the contractor’s delay in promptly manufacturing and delivering the equipment than arose in this case. It was certainly unforeseeable by plaintiff and was beyond its control and without its fault or negligence. It was certainly due to acts of the Government.
We are not here concerned with any question of breach of the contract, but only with the question whether plaintiff or defendant should be held responsible for delay in performance within the time specified. It is well settled that where one of the parties to a contract demands strict performance as to time by the other party, it must comply with all the conditions requisite to enable the other party to perform his part, and a failure on the part of the one demanding performance to do that which it required of him (in this case to assure plaintiff that it would pay for what it bought) to enable the other party to perform without hindrance or delay within the time limit operates as a waiver of the time provisions of the contract. Ittner v. United States, 43 C. Cls. 336; The New Jersey Foundry & Machine Company v. United States, 44 C. Cls. 178; American Dredging Company v. United States, 49 C. Cls. 350; The United Engineering and Contracting Company v. United States, 47 C. Cls. 489, affirmed 234 U. S. 236. In the case last cited, it was held that “Here the delays of the Government prevented the claimant from a strict performance, and thereby it waived the contract time within which to perform, and that waiver operated to eliminate the definite date from which to assess liquidated damages; and though the claimant in continuing the work was thereby obligated to complete the same within a reasonable time the liquidated damage clause was not thereby restored and made applicable to an unreasonable time.” In case of failure to complete within a reasonable time, the Government, having delayed the contractor, would be limited in its claim to actual damages. The contractor in the case at bar completed the work within a reasonable time after it was given assur- *247 anee that it would be paid for the work called for, and the Government does not show, nor does it claim, that it sustained any actual damage.
Plaintiff is entitled to recover and judgment in its favor for $13,692.20 will be entered. It is so ordered.
Williams, Judge; GkeeN, Judge; and Whaley, Chief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.