Littleton, Judge,
delivered the opinion of the court:
This case arises under a contract entered into between plaintiff and the United States for dredging a certain area in Fore Fiver, Portland Harbor, Maine. Plaintiff was required to furnish all labor and material, perform all work required, and was to be paid 32 cents a cubic yard for the material removed. The specifications mentioned the fact that a certain railroad bridge which spanned the area to be dredged had recently been removed and also stated that “ The material to be removed is believed to be soft mud and soft clay with some broken pile ends in the site of the old railroad bridge, but bidders are expected to examine the work and decide for themselves as to its character and to make their bids accordingly.” When plaintiff commenced work it found a large number of driven piles in and about the bridge area not specifically mentioned in the specifications and it now seeks to recover the additional cost incurred in removing the piles and other debris which made its work more expensive than.it otherwise would have been. In support of this part of the claim it is urged that the conditions found were so different in character from those represented by the specifications that they operated to the prejudice of the contractor and gave rise to a claim for extra payment for the work involved.
Plaintiff makes no claim of fraud or positive misrepresentations on the part of the Government in its invitation for bids or in the specifications, or that the Government with *574 held information from plaintiff as to the character of the area in qu'estion. Plaintiff’s position in substance is that it found more obstructions than it expected to find and that, therefore, it should be permitted to recover. However, the specifications not only called attention to the railroad bridge which had only recently been removed and stated that broken pile ends might be expected to be found in the site of the old railroad bridge, but also stated that bidders were expected to examine the area and decide for themselves as to the character of the work to be done. We find nothing in this description that would warrant the material to be dredged or that would amount to more than an expression of an opinion as to its character. Plaintiff was put on notice of the former existence of the railroad bridge and that it might expect to encounter piles in its dredging work. Moreover, it was admonished to make an examination and determine for itself the character of the material to be dredged.
With respect to an examination of the area it is urged by plaintiff that it had only ten days from the date of the invitation for bids to the date it was required to submit its bid, and that within that time it could not have made such an examination as would have advised it fully as to the character of obstructions encountered. The specifications were clear and it does not appear that plaintiff made any serious attempt to determine for itself the character of the material to be dredged. Its examination consisted of “ punching the job out with a rod.” Upon examination it submitted its bid at the price which the defendant paid. The examination made shows that plaintiff was not relying upon statements made in the invitation for bids as positive representations. At the time plaintiff submitted its bid it was carrying on a dredging operation in an area immediately adjacent to the one on which its bid was submitted and it was not only familiar with the area but knew that the railroad bridge had only recently been removed. The fair inference from these facts would seem to be that plaintiff was as fully advised as to the character of the material to be dredged as was the defendant and that it was satisfied from such examination as it made and its general knowledge of the area to take a chance on its *575 bid without more detailed examination. As the court said in McArthur Brothers Company v. United States, 258 U. S. 6, “ To hold the Government liable under such circumstances would make it insurer of the uniformity of all work and cast upon it responsibility for all of the conditions which a contractor might encounter ” when the contractor was equally advised as to the conditions to be encountered, when there was no deceptive representation of the material, and when the specifications did not purport to speak with certainty with respect to the material in question.
It should be further observed that even after plaintiff found the obstructions of which it complains, it failed to take any of the steps provided in the contract in order to obtain relief. No written protest was filed with the contracting officer, nor was appeal taken to the head of the department concerned. All it did was to protest by telephone conversation with the senior civilian engineer and rest its case with such a statement until several months later when the contract was about completed. Plaintiff was familiar with the terms of the contract in question and had carried out other contracts of a similar nature with the Government. To allow recovery in this instance would amount to a disregard of many of the provisions of the contract and establish a dangerous precedent in cases of this character. Sanford & Brooks Co. v. United States, 267 U. S. 455.
It is also shown that at the time bids were invited a competitor of plaintiff was engaged in dredging an area which crossed the site of the old railroad bridge. It is fair to suppose that in submitting its bid it took into consideration the obstructions which it doubtless knew to exist, and since plaintiff was the successful bidder it is a reasonable conclusion that the competitor submitted a higher bid than that of plaintiff. In effect plaintiff asks that it be compensated for work that was reasonably covered by the specifications and which other bidders may well have considered in making their bids, but which plaintiff contends it did not consider in making its bid and for which it did not request a change order during the period of operations. In such circumstances relief cannot be given.
*576 The principal cases relied upon by plaintiff, namely, Hollerbach v. United States, 233 U. S. 165; Christie v. United States, 237 U. S. 234, and United States v. Atlantic Dredging Company, 253 U. S. 1, are fully analyzed by the Supreme Court in MacArthur Brothers Co. v. United States, supra, and leave no question of their inapplicability to a situation such as the one presented in the case at bar. While plaintiff maj^ have encountered more obstructions and had more difficulty and incurred more expense in carrying out its contract than it had anticipated, such a situation did not arise on account of any misrepresentation or fault on the part of the Government, and the defendant cannot, therefore, be held liable under the contract.
The foregoing conclusion disposes of plaintiff’s claim that it should be compensated for the cost of bringing an additional lighter to the scene of operations and also for the delays which occurred when the obstructions were encountered.
The further contention is made that the defendant erroneously deducted $6,340 as liquidated damages for failure to complete the work within the time specified in the contract. The specifications that accompanied the invitation for bids provided that the successful bidder should begin work within 15 days after notice from the defendant to proceed. The specifications also provided for the dumping of the dredged material at a point some five miles from the channel to be dredged, but gave to the bidder the privilege of selecting another dumping ground which would be considered in making the award. Before such substituted grounds would be agreed to by the defendant it was necessary that the successful bidder furnish the defendant with evidence of written consent on the part of the owner of the substituted grounds. All expenses in connection with such substituted grounds were to be borne by the successful bidder.
Plaintiff submitted its bid May 9, 1930, at or about which time it was found that it was the low bidder. Its bid, however, stated that it proposed to dispose of the material at a place other than that named by the defendant. At the time the bid was submitted, plaintiff was engaged in a dredging *577 operation for The Texas Company and the proposed dumping ground was on that company’s property and at a point which was not yet ready to receive the material because of the operations then being carried on. June 12, 1930, .plaintiff furnished the requisite consent of The Texas Company to dump the dredged material on its premises and in the letter giving the consent The Texas Company stated that it would be ready to receive the material “ on or about August 1st.” After the receipt of this information plaintiff was awarded the contract on June 25, 1930, and the contract was approved July 23, 1930, by defendant’s engineer in charge. The record is silent as to any communications between the parties from June 12,1930, until July 25,1930, when defendant notified plaintiff to commence work under the contract within fifteen days, that is, by August 10, 1930. Plaintiff, however, did not start work until November 8, 1930, when its lighter Townsend arrived on the area and began preliminary work. It began the actual dredging work January 7, 1931. There is no evidence that when plaintiff found it could not begin work by August 10, 1930, it requested any extension of time within which to begin work, or asked for any postponement.
The contract provided that the work should be completed October 19, 1930. It was not completed until September 1, 1931. The defendant assessed liquidated damages at $20 a day for 317 days, such period being the number of calendar days from the date the contract should have been completed until the date the work was finished.
The principal objection made by plaintiff is that when the defendant accepted the substituted dumping grounds there was thereby a modification of the contract to the extent that plaintiff was not required to begin work under the contract until it finished its work with The Texas Company and until that company was ready to receive the dredged materials. We cannot agree. The contract made specific provision as to when the work should begin, and it also gave the bidder the privilege of either using the dumping grounds provided by the defendant or suggesting substituted grounds. Plaintiff stated in its bid that it proposed to use certain sub *578 stituted grounds and, after the necessary permission from the owner of such grounds, the defendant acquiesced in their us'e and the contract was accordingly executed. But this did not constitute any modification of the time for beginning or completing the work. The place where the dredged material might be dumped was inserted in the contract at the request of plaintiff. The defendant was not concerned as to where the material was dumped so long as its rights were not prejudiced by the place s'elected. The letter from The Texas Company giving consent stated that it expected to be in a position to receive the material August 1st, and the notice to commence work conformed to such date. The defendant was not advised further that The Texas Company was not in a position to receive the material at a given time or that plaintiff had not finished its work for The Texas Company, and we think that under the contract in suit the defendant was not in th'e least concerned with these matters. It is immaterial that at least some of the officers of the defendant knew that plaintiff had been delayed in commencing work under the contract in suit because of its delay in completing its work for the Texas Company. There was no contractual duty imposed on the defendant’s officers to complain or object or that by not doing so they waived any of the provisions of the contract. Whether defendant would have granted an extension under the circumstances we do not know, but, in view of the plain and unambiguous terms of the contract as to the time when work should begin and the penalty for delay in the event it should not be completed within the period specified, we think it is clear that plaintiff acted at its peril when it failed even to seek an extension and that the liquidated damages assessed in accordance with the terms of th'e contract cannot be remitted.
Some suggestion is made that in any event liquidated damages should not be assessed for the period from December 15,1930, to April 1,1931, when the plaintiff was not required under article 3 of the specifications to carry on operations. That period, however, would only be excepted when the completion period specified in a contract extended beyond such *579 winter period and can have no application in the case at bar where the date for completion expired prior to December 15, 1930.
It follows that the petition must be dismissed. It is so ordered.
Whaley, Judge; Williams, Judge; Green, Judge; and Booth, Chief Justice, concur.