Williams, Judge,
delivered the opinion of the court:
.Plaintiffs, and the United States, through its contracting officer, entered into a contract on December 7, 1933, whereby plaintiffs agreed to furnish all labor and materials and perform all work required for the construction of the substructure of the Vertical Lift Railway Bridge over the Cape Cod Canal, at Buzzards Bay, Massachusetts, in accordance *241 with certain specifications made a part of the contract. Under paragraph No. 102 of the specifications the work to be performed was stated to be the construction of two main piers and two abutments for the bridge, together with certain filling, excavation, grading, removal of' existing structures, and other incidental work.
It is stated in Article 133 of the specifications that wash borings have been made at various points at the site of the work; that these borings were made in the usual manner and with reasonable care arid their locations, depths, and the character of material apparently encountered ■ have been recorded in good faith on the contract plans. It is further stated in Article 133 that there is no expressed or implied agreement that the depths or the character of the material have been correctly indicated and that bidders should take into account the possibility that conditions affecting the cost or quantities of work to be done may differ from those indicated.
Article No. 134 states that borings apparently indicate that boulders may be encountered in varying numbers and sizes at any or all the excavations to be made for the work.
Article 303, as to method of construction, in part provided:
The contractor may construct the piers by . such method as he may elect, subject to the approval of the contracting officer both as to general method and as to details. Each bidder must describe in his bid, in 'writing, the general method he proposes to use, and must be prepared at the time of submitting his bid to submit to the contracting officer full information as to the method,, and consideration will be given to the method proposed, in determining the award of the contract.
* * * * * *
For the construction of these piers it is expected that the contractor will elect to rise one of two methods, either:
(a) the open cofferdam method, involving the usé of steel sheet piling, driven to proper alignment and depth, and adequately braced; or
(b) the caisson method, involving the use of a caisson, presumably of, the open well type to permit excavation in the open, but with provision- for sealing wells and applyiny compressed air if same be found necessary or desirable.
*242 Representatives of the plaintiffs visited the site of the-work before. making estimates of the cost of the work or submitting their bid. They-went to the defendant’s engineers’ office and made an examination of the wash borings made by the defendant. They made no borings themselves but relied upon the samples and data of the borings made-by or for the Government to inform themselves before bidding as to the subsurface conditions at the site of the work. It is shown, and we have found, that to make either wash or core borings around the entire perimeter of the proposed excavation would have been impracticable and too expensive, and also that plaintiffs did not have sufficient time to make-borings of their own. Plaintiffs in their bid elected to use-the open cofferdam method in the prosecution of the work.. Eleven contractors other than the plaintiffs submitted bids,, some of whom proposed to use the cofferdam method and others the caisson method. The plaintiffs’ bid was accepted by the defendant and the contract entered into in accordance with the terms thereof. The defendant’s contracting officer approved the method of performing the work proposed by plaintiffs both as to general method and as to details.
'The open cofferdam method of operation entails the driving around a driving frame and down to the specified elevation of interlocking steel sheeting. This forms the perimeter of the particular pier to be constructed. The dimensions of the main channel piers were 44 x 88 feet. As the-sheeting is driven down, the enclosed area is excavated, and when finally excavated to the required depth, the area is poured with concrete and the pier constructed in it. In the operation, the toe of the steel sheething must always be from 8 to 10 feet below the excavation, and the enclosed area is kept free from water or seepage of other subsurface material.
The plaintiffs commenced work promptly and as the work progressed the presence of boulders and impacted gravel seriously hampered the plaintiffs in the driving of the steel sheet piling. This necessitated the removal of boulders at the bottom or toe of the sheeting, and when this was done the outside pressure caused blow-ins or boils which *243 filled the cofferdam with sand and water. This delayed the work and made it difficult and hazardous. In March 1934 the plaintiffs and the defendant commenced discussing and studying the situation thus presented. These discussions continued until June 18, 1934, during which time plaintiffs continued their efforts to construct the main channel piers by the cofferdam method. During this time they repeatedly informed the- defendant’s contracting officer that it would be impossible to complete the work by that method as the nesting of boulders made penetration and the driving of the sheeting to grade impossible. On June 18, 1934, plaintiffs and the defendant substantially reached an agreement that the cofferdam method of construction be abandoned, and a new method of construction with changed plans and altered specifications was adopted. A series of change orders were thereupon issued by the contracting officer in which changes in the method of construction were authorized. As a result of the change orders plaintiffs were relieved from excavating to the originally specified depths and were directed, in lieu thereof, to drive oak piles as a foundation for the channel piers. On the receipt of these change orders plaintiffs proceeded with the work under the changed method and completed it promptly and efficiently, without any excess cost beyond that other than as provided in the change orders themselves.
Plaintiffs started work on the change orders for the main piers June 16, 1934. -Based on the original contract price and the work completed at that time, apportioned to the total amount to be done to form the complete structure, their earnings on the main piers, as shown by the United States engineers’ certificates and. vouchers of payment, amounted to $86,380. The actual cost of the work to them on the piers up to this time was $206,595.21, for which they had estimated $66,879.14 in their bid, a claimed loss of $139,-716.07. Adding to this amount their anticipated rate of profit of 10%, raises the loss to $153,687.68. Plaintiffs seek to recover the amount of this loss, which it is contended was the excess cost of completing that portion, of the entire job that was completed up to the date of the first change order, over and above what would .have been the cost of *244 completion to that, date, if the subsurface conditions at the site of the work had been such as they had a right to assume they would be from the defendant’s representations.
The basis of plaintiffs’ claim is that the defendant’s responsible officers in inviting bids for the work made various, deceptive and misleading representations as to the subsurface conditions at the site of the piers; that plaintiffs relied on these deceptive and misleading representations in the submission of their bid and in the proposal to use the cofferdam method in constructing the channel piers, and that the loss claimed resulted directly therefrom; that these deceptive and misleading representations had to do with the subsurface conditions at the site as affirmatively set forth in the invitation to bid and in ,the specifications, and also the failure of the contracting officer to inform plaintiffs and prospective bidders as to material facts within the defendant’s knowledge with respect to the subsurface conditions likely to be encountered in the prosecution of the work, which, if known to the plaintiffs, would have materially controlled them in the submission of their bid.
It is claimed by plaintiffs that the defendant failed to inform them of the existence of material facts in respect .to the subsurface conditions at the site of the work prior to the submission of their bid, all of which were in the knowledge and possession of the defendant, as follows: (1) That the defendant’s consulting engineers, Parsons, Klapp, Brinckerhoff, and Douglas, who had supervised the building of the original Cape Code Canal in the years 1910 to 1915, had recommended to the contracting officer that the core-boring method be used in testing the subsurface conditions and that the caisson method only be adopted for the construction of the channel piers; (2) that prior to the submission and acceptance of their bid considerable quantities of dynamite were used by the defendant in the making of the wash borings; and (3) that throughout the year 1933 another contractor was engaged in widening the canal throughout the greater part of its length; that it had considerable difficulty in the prosecution of its contract due to the fact that it was encountering boulders and boulder conditions, making it difficult for it to carry on the work, and *245 that within a few days after the invitation for bids had been issued in this case, the contractor abandoned the prosecution of its work under the contract.
It is urged by plaintiffs that the consulting engineers, by reason of the fact that they had superintended the construction of the original canal, possessed superior knowledge as to the subsurface conditions throughout the area of the canal and knew that boulders large and small were distributed throughout the entire area, and that their recommendations that the core-boring method be used in testing the subsurface conditions at the site of the work and that the caisson method be used in the construction of the piers were based on this superior knowledge, all of which, if made known to the plaintiffs, would have influenced their judgment to the extent that they would neither have submitted a bid nor undertaken to construct the main channel piers by the cofferdam method.
The proof does not support the claim that the consulting engineers of the defendant possessed superior knowledge as to the distribution of boulders throughout the area of the canal or at the site where the piers in question were constructed. They knew, of course, that boulders large and small were distributed throughout the entire area of the canal and that they might be encountered at any point in varying numbers and sizes. This knowledge was likewise in the possession of plaintiffs. One of the officers of the plaintiff companies had been engaged in the vicinity of the proposed bridge in work similar to that'called for in the present contract and in the construction of the old railroad bridge approximately 75 feet distant from the piers involved, and also in construction of other bridges at the Cape Cod Canal some distance from the site of the present work. The plaintiffs possessing the same knowledge in respect to the distribution of boulders throughout the area of the canal as that possessed by the consulting engineers of the defendant were therefore neither damaged nor misled by the failure of the contracting officer to inform them as to the recommendations made by the consulting engineers as to the methods that should be adopted in the performance of the work.
*246 In respect to the contention that plaintiffs were misled by the failure of the defendant to inform them that dynamite was used to get by boulders while making the borings it need only be pointed out that wash-boring maps show only the stratification of materials in various holes shown on the plans and do not show the methods employed in getting the borings down. The method of making the bor-ings and the fact that dynamite was used and similar information is recorded in the log book. Plaintiffs knew this but made no effort to consult the log book, which was available to them. Plaintiffs therefore have no one but themselves to blame for the fact that at the time they submitted their bid they did not know that dynamite had been used by the defendant in making the borings and can not be heard to complain that they were misled or damaged by the defendant because of that fact.
The further contention that plaintiffs were misled by the failure of the contracting officer to inform them of the boulder difficulties then being encountered by a dredging contractor in widening and deepening the canal at another point is without merit. Plaintiffs knew that boulders were distributed throughout the entire area of the canal and were liable to be encountered at any point. This information if imparted would have added nothing to the knowledge already possessed by plaintiffs and would in no way have aided them in reaching a conclusion as to what the situation in respect to the presence of boulders might, be in this case.
Plaintiffs were informed in the specifications for the work which accompanied the invitation to bid that wash borings had been made under the direction of the contracting officer and the engineers at various points at the site of the work and that dry samples had been made. They were experienced contractors and knew what the wash-boring method was. They were further informed in Article 134 of the specifications that borings apparently indicate that boulders may be encountered in varying numbers and sizes at any or all the excavations to be made for the work. They were further informed in Article 706 of the specifications that the material to be removed is believed to be mostly sand with *247 possibly logs and other foreign material, and also certain structures. Bidders were also advised in this article of the specifications that they must study the borings data, examine the site and decide for themselves as to the material to be excavated and the obstacles to be removed.
Plaintiffs base their right torecover on the decisions in Hollerbach v. United States, 233 U. S. 165; Christie v. United States, 237 U. S. 234; United States v. Atlantic Dredging Co. 253 U. S. 1; United States v. Smith, 256 U. S. 11, and Levering & Garrigues Co. v. United States, 73 C. Cls. 566.
In Hollerbacv. United States, supra, the claimants brought suit upon a contract for the repair of a dam in Green River, Kentucky. The case turned upon the question of the right of claimants to recover because of certain damages suffered by them which would not have accrued had the dam been backed with broken stone, sawdust, and sediment, as was stated in the specifications attached to the contract. As claimants proceeded with the work it was found that the dam was not backed with broken stone, sawdust, and sediment, as stated in the specifications, and below 7 feet from the top to the bottom there was a backing of cribbing of an average height of 4.3 feet consisting of sound logs filled with stone. This made the cost of the work much greater than if the representation inserted by the Government in the specifications had been true. It was held that the claimants, upon these facts, were entitled to recover.
In Christiv. States, supra, claimants sought to recover damages due under a contract with the United States for the construction of 3 locks and dams on the Warrior River in Alabama. One of the items of the contractor’s claim was for extra expenses incurred by claimant in the pile driving and the work of excavation on account of misrepresentation by the defendant of the materials to be penetrated and excavated. It was stated in the specifications, among other things, that “the- material to be excavated, as far as known, is shown by the borings, draw *248 ings of which may be seen at this office, inform and satisfy themselves as to the nature of the material.” The drawings “showed gravel, sand, and clay of various descriptions and showed no other material.” It developed during the progress of the work that the material to be excavated consisted largely of stumps below the surface of the earth, buried logs, cemented sand and gravel, and sandstone conglomerate, which materials were far more difficult and expensive to penetrate and excavate than ordinary sand and' gravel such as was described in the drawings. It was alleged in the petition that “the existence of the more difficult and expensive material was known to the persons who made the borings and to the resident engineer of the United States under whose supervision they were made; and that the statement in the specifications was untrue in fact and misleading, causing the claimants to propose to do the work upon the basis shown by the drawings and not upon the basis of the more difficult and expensive work, which in point of fact existed and was known to the officers of the United States. * * * That the erroneous and deceptive drawings misled claimants and they were compelled to spend $10,510.80 over and above the rates named' in their proposal and contract, which rates were based upon the materials shown by such drawings.” The court held that these allegations were substantially sustained and awarded claimant a judgment.
In United States v. Atlantic Dredging Co., supra, the claimant entered into a contract with the Goverment for certain dredging operations in the Delaware River. The specifications and the map attached thereto showing tests made by the defendant as to the character of the material to be dredged described the material to be “mainly mud or mud with admixture of fine sand,” whereas the material to be dredged was in fact different and more difficult and expensive to dredge than that described in the specifications. The specifications were deceptive and misleading in that the test borings gave information to the Government, not imparted to bidders, of materials more difficult and expensive to excavate than those shown by the specifications and map. The claimant was awarded judgment.
*249 In United States v. Smith, supra, claimants entered into a contract with the Government in which they agreed to' excavate a ship channel 21 and 22 feet deep, located in section 8 of the Detroit River, in accordance with specifications attached to and made a part of the contract, for the sum of 18 cents per cubic yard of excavation. The specifications stated that the material to be removed consisted of clay, sand, gravel, and boulders, all in unknown proportions. In the prosecution of the work the claimants encountered a natural bed of limestone rock, a material entirely different from that described in the specifications. The claimants protested against excavating and removing the limestone rock and requested that an extra price be fixed for doing this work. The defendant refused to fix any other price than that called for in the contract and required the claimants to complete the work at the contract price. The claimants by reason of the removal of this material sustained a substantial loss which the court held they were entitled to recover.
In Levering & Garrigues v. United States, supra, the claimant, a corporation, entered into a contract to construct, at the United States Naval Academy, Annapolis, Maryland, an addition to an existing power house. The building was to be erected of reinforced concrete on a pile foundation. In driving the piling necessary to complete the work claimant encountered a sunken sea wall which greatly retarded and increased the cost of the work. This sunken sea wall was not shown on the plans and specifications for the work submitted to claimant although its presence was known to the defendant at the time the plans and specifications were submitted. The court held that the defendant misled the claimant as to the existence of the buried obstruction beneath the surface of the ground where the piles were driven and was liable to plaintiff for the extra cost incurred in doing the piling work occasioned by such obstruction.
It is clear that the facts in the cases cited and relied upon by plaintiffs are distinguishable from the facts shown in the instant case. We have found that the borings in this case were made in the usual manner and accurately reported to the plaintiffs and that no information concern *250 ing the subsurface material obtained while making the borings -was withheld from plaintiffs or otherwise misrepresented to them. This finding is abundantly supported By the evidence.
In each of the cited cases claimants were misled by inaccurate and deceptive specifications on which they had a right to rely in submitting their bids. Such was not the situation in the case before us. There was no knowledge of impediments to performance known to the defendant which was withheld from plaintiffs, and no misrepresentation of conditions existing at the site of the work. Seven out of the twelve borings made by the defendant disclosed the presence of boulders and plaintiffs were forewarned in the specifications that boulders large and small might be encountered at any point of the work in constructing the piers. Plaintiffs expected to encounter boulders during the progress of the work and took this fact into consideration in estimating the cost of the work before submitting their bid. That they underestimated the difficulties encountered because of the presence of boulders at the site of the work is quite evident and is indicated by the fact that out of the twelve bids submitted theirs was the lowest. This fact, however, under the rule long and uniformly laid down by the courts, caimot avail them in their claim for damages because of the increased cost of the work over what they estimated it would be in the submission of their bid.
The defendant having furnished to plaintiffs all the information in its possession in respect to the subsurface conditions existing at the site of the piers, without misrepresentation- or concealment in any respect, is not liable to plaintiffs for any loss incurred by them in the performance of the work.
The case, we think, falls within the decisions in MacArthur Brothers Co. v. United States, 258 U. S. 6; Trimount Dredging Company v. United States, 80 C. Cls. 559; Simpson & Co. v. United States, 31 C. Cls. 217 (affirmed 172 U. S. 372); Midland Land & Improvement Co. v. United States, 58 C. Cls. 671, and General Contracting Corporation v. United States, 88 C. Cls. 214, and is controlled by them.
*251 This court in Midland Land & Improvement Co. v. United States, supra, in discussing the rule laid down in the decisions as to misrepresentations said:
The burden of proving misrepresentation rests upon the party making the allegation. It is not to be presumed, and one may not, either under the Christie or Hollerbach case, simply show a different condition in some respects from that which the chart or blue prints of borings discloses, and rest his case upon the theory that the court must infer a misrepresentation. There must be some degree of culpability attached to the makers of the maps and charts, either that they were knowingly untrue or were prepared as the result of such a serious and egregious error that the court may imply bad faith. The many contract cases in this court, too many to cite, sustain this principle.
In the recent case of General Contracting Corporation v. United States, supra, the court said:
A misrepresentation of the character of the one relied upon by plaintiff must be one that actually misleads the party aggrieved, * * *. We have no record showing that the drawings were false so far as they went. There is no proof of record that any official of defendant registered a condition, as disclosed by a boring, that was false. In order to sustain misrepresentation it must be proven that the defendant’s official made a boring and found a certain condition and did not register exactly what was found, but, on the contrary, registered a different condition from what the boring showed.
It follows that plaintiffs are not entitled to recover, and it is ordered that the petition be dismissed.
Whaley, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.