Littleton, Judge,
delivered the opinion of the court:
From a study of the contract, specifications and drawings, and all the evidence submitted in the case, we are of opinion that plaintiff is not entitled to recover on any of the six claims, totaling $40,234.87, for the reasons hereinafter stated under each of the claims asserted.
The first claim of $308.46 is for certain concrete excavation, alleged to have been done by channeling, at the unit price of $1 a square foot. This claim grows out of the *28 provisions of the specifications which call for certain excavations to be made by plaintiff in the existing concrete structure of Dam 29 for the purpose of installing thereon the tripping bar weir and certain equipment and machinery necessary for the operation of such weir. The contract provided two units of work to be performed in this connection. The first was contract item #3, “concrete excavation,” estimated at 70 cubic yards, and the unit price therefor was $8 a cubic yard; the second was contract item #4, “concrete channeling,” estimated at 525 square feet at $1 a square foot. Contract drawing 82/21 indicated where the concrete was to be removed. At certain designated points this drawing stated: “Channel & remove all concrete”; at other designated points where concrete excavation was called for the drawing stated: “Remove old concrete and air lines from pipe trench” and “openings to be cut in pier to receive machinery.”
Pars. 2-01 to 2-04, of Sec. II of the specifications with reference to concrete excavation provided as follows:
2-01. O\onor&te excavation. — All concrete removed for keys and for the placing of pipe and machinery shall be classed as concrete excavation. No blasting will be permitted. Great care shall be taken to prevent any injury to adjacent concrete.
2-02. Measurement. — Measurements for concrete excavation will be made for the actual quantity in cubic yards excavated as shown on the drawings, or such modification as directed by the contracting officer. The prices bid for excavation will also cover the disposal of the excavated material. Waste material shall be deposited in the river within 1 mile of the work as directed by the contracting officer.
2-03. Gharmelmg. — Wherever indicated on the drawings, the vertical face of concrete excavation shall be made by channeling machine or suitable drilling or broaching outfits. The concrete shall be removed without disturbing the adjoining concrete and will be paid for as concrete excavation. In case of the upstream key great care shall be taken in removing the concrete adjacent to the anchor beams and rods. The work of channeling will be paid for by the square foot of vertical area cut at the price bid for channeling.
*29 2-04. Foundation. — The character and position of the proposed foundation is shown on drawing O. E,. 29-82/21. All concrete surfaces for foundation must be freed from loose pieces, thoroughly cleaned and worked down to a firm, solid bed of suitable form satisfactory to the contracting officer.
Plaintiff contends that it channeled 980.46 square feet of concrete for which it should have been paid at the rate of $1 a square foot under contract item #4, or $308.46 in excess of the amount paid by defendant on that basis. The record shows that the contracting officer paid plaintiff at the rate of $1 a square foot for 6/2 square feet of concrete excavation where channeling was indicated on the drawings, and where channeling was done. The balance of the concrete excavation shown on the drawings was held not to have been removed by channeling and was paid for under contract item #3 at the rate of $8 a cubic yard. The contracting officer found as a fact that plaintiff had channeled 6/2 square feet of concrete and made payment accordingly. Art. 15 of the contract provided that the decision of the contracting officer on all disputes concerning questions of fact should be final and conclusive as to such questions of fact, subject to appeal within thirty days to the head of the department. No appeal was taken from the decision of the contracting officer and the record does not establish that his decision was erroneous.
The second claim of $310.// represents expenses incurred by plaintiff for grouting a drain at the base of Dam 29 which had been constructed many years before by another contractor. As shown by the findings, it was necessary for plaintiff to close this drain to prevent the leakage of water into the cofferdam in order that the water might be pumped from this cofferdam. The existence of the drain at the base of the concrete structure of the existing Dam 29 was shown on the drawings of plaintiff’s contract. There was no misrepresentation by defendant in that regard, nor was there any concealment of facts. The defendant gave plaintiff all the information it had as to location of the drain, and the defendant did not have any information and did not know whether such drain had been closed or left open by the prior contractor who had constructed the main dam. The defendant made no representation to plaintiff as to whether the *30 drain was open or closed. In these circumstances the defendant cannot be held responsible for plaintiff’s expense of closing this drain in order that it might successfully unwater its cofferdam. Blakeslee & Sons, Inc., et al. v. United States, 89 C. Cls. 226, 250, 251; certiorari denied, 309 U. S. 659.
The third claim is for $942.23. Plaintiff contends that this amount represents the increased cost of constructing its cofferdam over what it would have cost if constructed as originally intended, and that such increased cost resulted from refusal of the defendant to open the bear traps and drop all wickets on Dam 29 to lower the water level of the upper pool. We find nothing in the contract or specifications which justified the plaintiff in thinking, when making its bid, that the defendant would lower the upper pool level until plaintiff had completed the construction and placing of its cofferdam. Par. 16 of the specifications provided that plaintiff should not interfere with material, appliances, or workmen of the United States and that it should not obstruct the lock, bear traps, or dam other than that part of the dam in which the work was being carried on, or interfere with their proper manipulation. Par. 18 provided that “The contractor will be required to dispose his plant and to conduct the work in such manner as to obstruct navigation as little as possible. * * * The work as a whole shall be so conducted as to permit navigation to pass the site at all times.” The opening of the bear traps and the lowering of the wickets would have interfered with the control of the pool above the dam and would also have interfered with navigation through the locks or over the dam. In these circumstances it is clear that the defendant did not violate the contract when it declined plaintiff’s request that the dam be opened and the upper pool lowered until construction of the cofferdam was completed.
Claims 4 and 6 are related and will be considered together. They are for damages in the amounts of $1,270.11 and $36,926.82, respectively, for alleged unreasonable interference by the defendant with prosecution of the work and delays alleged to have been caused by the defendant in the performance thereof. The record does not sustain these claims. These claims arise out of the construction and maintenance of the cofferdam, and are based upon the con *31 tentions, first, that the Government did not advise plaintiff that a “Chanoine weir” on the Ohio end of Dam 29 was not in an operating condition; and, second, that the defendant operated the bear traps and wickets of the dam in such a way as to cause plaintiff large increased and unnecessary expense in the performance of the work called for by its contract. The invitation for bids required plaintiff to visit the site and acquaint itself with all available information concerning the character of material to be removed and the local conditions having a bearing on the transportation, handling, and storing of material, and that failure so to acquaint itself with all available information concerning these conditions would not relieve it of assuming all responsibility for improperly estimating the difficulties entering into and the costs of successfully performing the complete work as required. Shortly before October 18, 1932, plaintiff’s president went to Dam 29, on which the work called for by its contract was to be performed, and viewed the site of the work from a location on the Kentucky shore of the river. He did not go to the opposite shore near which the Chanoine weir was located. This Chanoine weir had not been in operation for several years and the trestle, from which such a weir is manipulated when it is in use, had been removed from Dam 29 several years before October 1932. Plaintiff’s president on his visit to the dam saw the lockmaster who, for a number of years, had been in charge of operation facilities of the dam, in regulating the pool level above the same, but he did not inquire of the lockmaster, the government engineer, or the contracting officer, whether the Chanoine weir on the opposite side of the river was in an operating condition; had he done so he would have been advised that such weir had not been used or been in an operating condition for several years. Plaintiff’s president was also familiar with the facilities on Dam 29 and the manner and method of their operation in maintaining and controlling the level of the pool above the dam. Plaintiff bid $22,000 for the necessary cofferdam work. In these circumstances and in view of the facts set forth in the findings, and the provisions of pars. 16 and 18 of the specifications, we think it is clear that the defendant is not liable for these increased *32 expenses and that plaintiff is not entitled to recover on these claims.
In claim 5 plaintiff seeks to recover $476.48, representing the cost of replacing Crib No. 1 on the upper side of its cofferdam, which crib, after it was first constructed, was washed out by the force of the current in the pool above the dam when Bear Trap No. 1 was opened, as usual, by the lockmaster for the customary purpose of regulating the pool above Dam 29. This crib was designed and constructed as a part of plaintiff’s cofferdam. When this crib was rebuilt, it was anchored to Crib No. 2 at the southeast corner of the cofferdam in the upper pool which was farthest away from Bear Trap No. 1. When so rebuilt, Crib No. 1 was not thereafter damaged by the current resulting from the manipulation of the bear traps. We think plaintiff is not entitled to recover on this claim. The contract and specifications clearly contemplated the manipulation of the bear traps and wickets for the purpose of regulating the height of the water in the pool above Dam 29. Under the contract and the specifications plaintiff was responsible for the adequacy of its cofferdam. In these circumstances the defendant cannot be held responsible for the expense claimed.
The petition is dismissed. It is so ordered,
GREEN, Judge; and Whaley, Ohief Justice, concur.
Whitaker, Judge, took no part in the decision of this case.