JoNes, Judge,
delivered the opinion of the court:
Plaintiff seeks recovery of excess costs incurred in completing a contract with the Government.
The contract called for the construction of five steel radio, masts, 125 feet in height, with concrete foundations, near Albany, New York.
The contract price was $4,639.00. The structures were to. be completed within 45 days after receipt of notice to proceed.
The plaintiff asserts that it encountered unforeseen difficulties in the way of subsurface water conditions which made it necessary to expend $2,267.50 for labor and materials above the amount originally contemplated.
For this sum it sues, together with $180.00 which it claims-was wrongfully charged against the contract as liquidated damages for delay in completing the work.
The contract was signed July 24,1934. The site was covered with trees and undergrowth. These were cleared by defendant and notice to proceed was given plaintiff October 1,1934.
Plaintiff’s representative visited the site before the bidding. A small stream ran about 100 feet north of the location. Defendant’s witness, the supervising engineer, testified that a swamp was located on the site, with dense undergrowth and a small pool of water. Plaintiff admitted the presence of trees and undergrowth, but denied that there was any swamp or pool of water on the premises at the time its representative made the inspection.
No borings were made by either plaintiff or defendant.
In making excavations for four of the towers the plaintiff struck water near the surface, requiring more labor and material than would have been necessary had such water not been encountered.
Plaintiff claims compensation under Article 4 of the contract which provides for adjustment should the contractor encounter, or the Government discover, during the progress of the work, subsurface or latent conditions at the site mate *510 rially differing from those shown on the drawings or indicated in the specifications.[1]
The invitation to bid contained certain proposal conditions, among which was a provision that bidders were expected to familiarize themselves with local conditions and make their own estimates of the difficulties attending the execution of the proposed contract including “subsurface conditions and all other contingencies.”
The specifications, which were a part of the contract, contain the following:
5 (b) Payment for excavation, sheeting, shoring, pumping, bailing, draining, backfilling, levelling, etc., shall be included in the prices bid in the schedule for the complete work; * * *
6 (c) No additional compensation will be allowed on account of any excavation or backfill being wret or frozen.
7 (c) In case of soft soil, or for other reasons, the contracting officer may order in writing (or by telegraph) that foundations be carried more than the minimum depth.
Other than as disclosed by the proposal conditions, the specifications and other contract provisions, the Government made no representations as to conditions at the site. There was no concealment, no witholding of information, and consequently no reliance.[2]
Of the three specification provisions above quoted 7 (c) is the only one that mentions changes in specification requirements that might call for the application of Article 4 of the contract. It provided that the contracting officer, on account of soft soil or for other reasons, should have the right to *511 order foundations carried to more than the minimum depth. No such order was issued.
The fact that the way is left open for adjustments under 7 (c) while conditions set out in specifications 5 (b) and 6 (c) are affirmatively included within the prices bid strongly indicates that the conditions plaintiff complains of were included in his undertaking. (See above.)
While plaintiff was required to do more work than he •evidently thought he would be called upon to do, he was given full opportunity to find out the facts. Nothing was withheld from him. The nearby stream was visible, as were the trees and undergrowth. He visited the site. He made such inspection as he saw fit. The specifications called for the meeting of certain conditions. With these facts before him he entered into the contract.
Plaintiff contends that he encountered extraordinary subsurface and latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications. The record as a whole does not justify this contention. Both the surface conditions at the site and the wording ■of the specifications strongly indicate notice or warning of .subsurface conditions likely to be encountered. However, it is not necessary to decide this question since the contracting officer ruled adversely on the claim for additional costs and .specifically declined to grant the same in a letter dated October 20,1984. The plaintiff took no appeal from this decision to the head of the department as required by Article 15 of the contract.
Even if plaintiff were otherwise entitled to recover, we do .not think the evidence shows what additional expense was necessary. The actual expense was set out, but the evidence ¡reveals that plaintiff used a far more expensive method than good engineering practice required.
The foundations were X-shaped, approximately 2% by 10 feet.
The supervising engineer suggested to plaintiff that by making this type of excavation much less work and expense •would be involved, that it would not be necessary “to form the foundations below the ground surface because the shoring would act as the form,” and that this would require far less pumping and bailing than the method used.
*512 Instead, tbe plaintiff, upon recommendation of a subcontractor, rented a clamshell (owned by the subcontractor) at $75.00 per day and excavated an area 30 to 35 feet in diameter for each tower. It was necessary to pump this area dry and build forms all the way to the subgrade depth, again empty the excavated area to set the reinforcing steel, and again empty the excavation in order to pour the concrete. It was necessary to move the pump from one location to another and move it back again for the next pumping. Much of this work and expense would have been avoided by using the method suggested by the supervising engineer.
The defendant should not be held responsible for a method that was far more cumbersome and expensive than necessary. The record fails to show what outlay would have been necessary had the proper method been used, only that it would have been much less expensive and would have called for less operating time.
In the circumstances the pioof of extra necessary cost is unsatisfactory, even though defendant’s liability were conceded.
The record does not disclose whether defendant withheld any amount for liquidated damages on account of the delay in completing the contract. In this state of the record no recovery can be had for this item.
It follows that the petition must be dismissed.
It is so ordered.
MaddeN, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.
Whitakee, Judge, took no part in the decision of this case.

 Art. 4. Changed conditions. — Should the contractor encounter, or the Government discover during the progress of the work, subsurface and (or) latent conditions at the site materially differing from those shown on the drawings or indicated in the specifications, the attention of the contracting officer shall be called immediately to such conditions before they are disturbed. The contracting officer shall thereupon promptly investigate the conditions, and if he finds that they materially differ from those shown on the drawings or indicated in the specifications, he shall at once, with the written approval of the head of the department or his representative, make such changes in the drawings and (or) specifications as he may find necessary, and any increase or decrease of cost and (or) difference in time resulting from such changes shall be adjusted as provided in article 3 of this contract.

 Trimount Dredging Co. v. United States, 80 C. Cls. 559, 574; General Contracting Corporation v. United States, 88 C. Cls. 215, 248; Blakeslee & Sons, Inc. v. United States, 89 C. Cls. 226, 250; James Stewart & Co., Inc. v. United States, 94 C. Cls. 95.