Jones, Judge,
delivered the opinion of the court:
Plaintiff by contract with' the Government dated July 29, 1935, undertook to dredge a temporary channel in a pool below the site of a proposed lock and dam in the Allegheny Eiver near Rimerton, Pennsylvania. The contract called for the excavation of a channel approximately 4,100 feet in length, varying in width from 100 to 150 feet, the average width being about 105 feet, and for the removal and disposal of the material lying above an elevation of 790 feet within the specified area, which would require the removal and disposal of about 162,000 cubic yards of material.
The contract rate was .295 per cubic yard, the total contract price being approximately $47,900.00. The channel was to be dredged parallel with the left bank when looking down stream; there were three other channels to be dredged alongside the channel involved in this action, thus making a total channel 500 feet wide, but these were provided for by separate contracts and are not involved in this suit.
The Schedule of Conditions accompanying the invitation for bids contained the following:
It is expected that bidders will visit the site of the work and acquaint themselves with all information concerning the nature of the materials that will be encountered in the river bed and all other conditions likely to affect the prosecution of the work. Core borings from the vicinity of the proposed Lock and Dam No. 9, Allegheny River, are on exhibition at Lock No. 8, Allegheny River, where they may be inspected by prospective bidders. Failure to acquaint himself with all available information concerning these conditions will *275 not relieve tlie successful bidder from assuming all responsibility for estimating the difficulties and cost of successfully performing the complete work as required.
Before advertising for bids defendant caused certain test pits to be dug under the supervision of one of its engineers. The materials encountered were recorded on a test pit data table. Three of these tests, Nos. 14, 17, and 19, were inside the instant contract area.
Before submitting its bid, plaintiff’s president visited the contract area and examined the materials taken from test pits 14, 17, and 19. He examined the walls of these pits; he also examined the core borings which had been drilled in the vicinity, and which disclosed materials similar to those shown in the test pit data table. Plaintiff’s engineer also inspected the operations of the dredging company which at that time was dredging for the Phillips Oil and Gas Company a pipe line trench across the entire river and which crossed the contract area. The engineer made a report to plaintiff’s president before the bid was submitted.
The specifications required the plaintiff to prosecute the work by excavating not less than 25,000 cubic yards during the first month after the date fixed for commencement, and an average of not less than 40,000 cubic yards per month thereafter. Under Change Order No. 1 the period for completion was extended 23 days, and under Change Order No. 2 the contract price was increased $250.00 which, with later adjustments, increased the contract price to $48,830.96.
Upon completion of the contract August 15, 1936, plaintiff was assessed liquidated damages under Article 9 of the contract and Paragraph 1-03 of the specifications at the rate of $20.00 per day for 84 days, a total of $1,680.00.
Plaintiff alleges that instead of materials such as had been indicated by the test pit data table, it discovered that the area to be excavated consisted of cemented sand, gravel, and rock, a very difficult subsurface material to excavate, and that instead of being able to do the work with the Sauerman 2y2 cubic-yard scraper bucket which it had expected to use, it found it necessary to provide and deliver a Diesel drag-line and finally a Sy2 cubic-yard dipper dredge. It claimed that as a result of the difference between the materials dis *276 covered and those shown on the tables, it suffered damages in the amount of $92,025.89, including $1,680.00 liquidated damages which it asserts were erroneously assessed. Plaintiff later reduced its claim to $75,528.35.
The record as a whole fails to sustain plaintiff’s allegations and does not justify its claim for damages.
The materials encountered were not substantially different from those indicated in the specifications and the bor-ings in the contract area — gravel, sand, small boulders, one-man stones, sandstone, and some clay. This conclusion is strengthened by plaintiff’s day by day notations which were made on its daily bulletins that were kept as the work progressed and which were entered at the time.
The daily report for June 29, 1936, contains this entry:
Pelican. — Dredging along right channel line #3 area between stations 11 plus 10 & 10 plus 38. Dredging hard. Material sand, gravel and some boulders. Dug thru, test hole #19 and found material fractically as shown on flans. [Italics supplied.]
The notations on the daily bulletins make no mention of the finding of any cemented material.
The materials were so near the same as those indicated on the specifications, borings and other data available to plaintiff that they cannot possibly form the basis for a cause of action based upon alleged misrepresentation. G. W. Blakeslee and Sons, Inc., v. United States, 89 C. Cls., 226, 246.
Plaintiff’s claim for damages to machinery is not sustained by the evidence. The K-55 Link-belt dragline with which the work was begun was in bad shape when it arrived on the job, and would not do the work properly. The dipper dredge Pelican with which most of the work was done was more than 20 years old and was not in good operating condition when it arrived on the project. The hull leaked badly, the boiler tubes leaked, the grate bars were defective and the fire door was broken off.
Even if plaintiff were otherwise entitled to recover there is no proper proof by which the amount of the damages can be measured. The plaintiff’s proof of damages is con *277 fined substantially to an effort to show the difference between the contract price and the cost to which plaintiff was put in completing the contract.
It is overwhelmingly clear from figures submitted by competitive bidders and the prior estimates by Government engineers that plaintiff’s bid was too low. The lowest competing bidders had submitted bids of .52 and .53 per cubic yard. The Government engineers had estimated that a fair price would be .54 per cubic yard. Plaintiff’s bid was .295 per cubic yard. Manifestly, if plaintiff had established a legal right to recover, its measure of damages would not be the difference in the contract price and the cost of completion, but the difference in the cost of completion, and what the cost would have been had the materials been as represented. Levering & Garrigues Co. v. The United States, 73 C. Cls., 566, 575. We quote:
The fact the plaintiff estimated it could do the piling work for a certain amount is not proof that it could have done the work for that amount except for the sea-wall obstruction; Its estimate as to what the work would cost may have been right or may have been wrong. It is incumbent on the plaintiff, before it can recover, to establish by proof what it actually cost to do the work over and above what it would have cost had the subsurface conditions at the site been such as the plaintiff had a right, from the representations made by the defendant, to assume they were. This the plaintiff failed to do.
The evidence in the case does not justify plaintiff’s claim for damages on the basis of the rental value of the equipment which it furnished. The rental value is not satisfactorily shown in the evidence. It was plaintiff’s own equipment. Neither the delay nor the damages to the equipment were shown to have been the fault of the defendant.
Plaintiff is not entitled to the remission of the amount assessed as liquidated damages. Its claim was presented to the proper authorities and denied. Their action was neither arbitrary nor capricious.[1]
*278 There is no doubt that plaintiff misjudged the extent of the work required and the difficulties that would naturally be encountered, but the data was made available to all bidders, an opportunity was given for personal investigation, no material facts were withheld, and no material misrepresentations were made by the defendant. With the facts before it, the plaintiff submitted its bid and voluntarily undertook the obligations of the contract. We know of no proper way by which plaintiff may escape the legal consequences of its act.
Judgment is entered for the defendant. It is so ordered.
Madden, Judge; Whitaker, Judge; Littleton, Judge; and Whaley, Chief Justice, concur.

 United States v. Gleason, 175 U. S. 588; McShain Company, Inc., v. The United States, 83 C. Cls. 405, 409.